HEINZ RETTIG & another *vs.* PLANNING BOARD OF ROWLEY.

Essex.   March 7, 1955. — April 5, 1955.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Subdivision Control. Equity Pleading and Practice,* Subdivision control appeal. *Words,* "Way."

In a suit in equity in the Superior Court by way of appeal under G. L. (Ter. Ed.) c. 41, § 81BB, as appearing in St. 1953, c. 674, § 7, from a decision by a municipal planning board that its approval of a plan under the subdivision control law was required, it was the function of the court to find the facts through a hearing de novo and to determine the validity of the board's decision by applying the law to the facts so found. [478-479]

A plan submitted to the planning board of a town in which the subdivision control law, G. L. (Ter. Ed.) c. 41, §§ 81K-81GG, as appearing in St. 1953, c. 674, § 7, was in effect was a plan of a "subdivision" within the definition in § 81L and required the approval of the board under that law where it appeared that the plan showed a tract divided into fifteen lots located on three ways physically existing long before the law became effective in the town, that the proposed width of each

way was several times its existing width, that one of the ways, only ten feet wide as existing, disclosed on a view merely the outlines of a roadway, ruts, indications of usage by some vehicle or vehicles, and a condition of impassability due to rain, and was not in any practical sense an existing way adequate "to furnish access for vehicular traffic to" the lots located on it, and therefore that the proposed division of the tract was "into two or more lots in such manner as to require provision for one or more new ways . . . to furnish access for vehicular traffic to one or more of such lots." [481]

BILL IN EQUITY, filed in the Superior Court on April 22, 1954.

The suit was heard by *Rome*, J.

*Bernard J. Lojko*, Town Counsel, for the defendant.

*James T. Connolly*, for the plaintiffs.

WILKINS, J.   The plaintiffs are landowners in Rowley. They submitted to the defendant planning board a plan of a portion of their land entitled "Rowley Hills Section E" for a determination by the board that approval under the subdivision control law was not required, and, after a determination by the board that in its opinion the plan required approval, brought this bill in equity by way of appeal.   G. L. (Ter. Ed.) c. 41, §§ 81P, 81BB, as appearing in St. 1953, c. 674, § 7.   The Superior Court entered a final decree that the plan does not require such approval, and the board appealed to this court.

The facts appear in the findings of the judge and in the plan, which is certified to us as an exhibit.   The judge heard the case on a statement of agreed facts and took a view. The land shown on the plan and other adjacent property were owned by one Fenno from 1909 until her death in 1952.   The plaintiffs purchased from her estate, and intend to divide their land into lots and to sell to individuals.   The four ways shown on the plan were constructed many years before the subdivision control law became effective in Rowley in 1951, and were in existence and in use for vehicular traffic by Fenno, her tenants, guests, and servants as a means of access to the premises shown on the plan and to other portions of her real estate.   Although others had had rights to use these ways prior to 1909, after Fenno became the owner

only she and those claiming under her could use them. In 1951 the public had no such right. Fenno Drive, eighteen to twenty-five feet wide, is a well constructed road, suitable for vehicular traffic, equivalent in width and general physical condition to Kittery Avenue, a public way, with which it connects, except that the latter has a hard top surface and Fenno Drive has a gravel surface. Mansion Drive, running off Fenno Drive in a westerly direction, is twenty feet wide and similar in construction to Fenno Drive and suitable for vehicular traffic. Bowlery Drive, leading off Mansion Drive in a northerly direction, is a rough country road, fourteen feet wide, and is traversable by vehicular traffic, though broken and sunken in spots on the day of the view owing to heavy rainfall. Orchard Drive, ten feet wide, leading off Bowlery Drive in an easterly direction, indicates usage as a roadway for vehicular traffic, but is in a poor state of repair. The outlines of a roadway and ruts are visible. The roadway was impassable on the day of the view owing to heavy rainfall.

The judge ruled that the plan does not require the approval of the planning board under the subdivision control law, G. L. (Ter. Ed.) c. 41, §§ 81K–81GG, as appearing in St. 1953, c. 674, § 7, "inasmuch as the ways in question, namely, Fenno Drive, Mansion Drive, Bowlery Drive and Orchard Drive, were all existing and adequate for access for vehicular traffic to the lots shown on said plan when the subdivision control law became effective in said Rowley."

The procedure in the Superior Court is prescribed in § 81BB, which is in part: "Any person . . . aggrieved . . . by any decision of a planning board concerning a plan of a subdivision . . . may appeal to the superior court sitting in equity for the county in which the land concerned is situated . . . . The court shall hear all pertinent evidence and determine the facts, and upon the facts so determined, shall annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require. The foregoing remedy shall be exclusive, but the parties shall have all rights of appeal and exceptions as

in other equity cases." This language is substantially similar to that of G. L. (Ter. Ed.) c. 40, § 30, as appearing in St. 1933, c. 269, § 1, as amended, relative to appeals from decisions of local boards of appeal, and to that of St. 1924, c. 488, § 19, as appearing in St. 1941, c. 373, § 18, concerning appeals under the zoning law of Boston, both of which we have had recent occasion to consider. *Bicknell Realty Co.* v. *Board of Appeal of Boston*, 330 Mass. 676. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555. *Cefalo* v. *Board of Appeal of Boston, ante*, 178. *Sheehan* v. *Board of Appeals of Saugus, ante*, 188. The duty of the judge was to conduct a hearing de novo and on the facts he should find to rule upon the validity of the determination of the planning board. The course followed was procedurally correct.

The basic provision of the subdivision control law is found in G. L. (Ter. Ed.) c. 41, § 81O, as appearing in St. 1953, c. 674, § 7: "No person shall make a subdivision of any land in any city or town in which the subdivision control law is in effect unless he has first submitted to the planning board of such city or town for its approval a plan of such proposed subdivision, showing the lots into which such land is to be divided and the ways already existing or which are to be provided by him for furnishing access to such lots, and the planning board has approved such plan in the manner hereinafter provided."

The judge made his findings and his ruling having in mind the provisions of G. L. (Ter. Ed.) c. 41, §§ 81L and 81M, as appearing in St. 1953, c. 674, § 7. Section 81L contains the definition: "'Subdivision' shall mean the division of a tract of land into two or more lots in such manner as to require provision for one or more new ways, not in existence when the subdivision control law became effective in the city or town in which such land lies, to furnish access for vehicular traffic to one or more of such lots, and shall include resubdivision, and, when appropriate to the context, shall relate to the process of subdivision or the land or territory subdivided . . . ."

Section 81M, entitled "Declaration of policy," reads: "The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas. The powers of a planning board and of a board of appeal under the subdivision control law shall be exercised with due regard for the provision of *adequate access to all of the lots in a subdivision* [italics supplied] by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; for reducing danger to life and limb in the operation of motor vehicles; for securing safety in the case of fire, flood, panic and other emergencies; for insuring compliance with the applicable zoning ordinances or by-laws; for securing adequate provision for water, sewerage, drainage and other requirements where necessary in a subdivision; and for co-ordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivisions."

The planning board contends that a physical way on the ground does not meet the requirements of § 81L, but that at the very least there must be a way in which those who are not owners have a right of way. We do not find it necessary to decide this question.

The plan shows fifteen lots, five on Mansion Drive and ten on Orchard Drive. Mansion Drive is to the south of, and roughly parallel with, Orchard Drive, and the two are connected by Bowlery Drive. The fifteen lots are in three rows of five each, five on the northerly side of Mansion Drive, five on the southerly side of Orchard Drive touching those on Mansion Drive, and five on the northerly side of Orchard Drive. The most westerly lot on Mansion Drive and the most westerly lot on the southerly side of Orchard

Drive also bound on Bowlery Drive. Orchard Drive leads to a circle in a dead end.

The plan indicates no proposed width for Fenno Drive, only a small part of which is shown, but Mansion Drive is to be fifty feet wide, and Bowlery Drive and Orchard Drive are each to be forty feet wide. In other words, Mansion Drive is to be two and one half times its present width on the ground, Bowlery Drive is to be nearly three times its width, and Orchard Drive four times its width.

The plan must be judged as a whole. Irrespective of the meaning of "way" in § 81L, and for present purposes taking "way" in the sense of a physical way on the ground, as ruled by the judge, it is plain that Orchard Drive on the ground is not a way "adequate for access for vehicular traffic" to ten of the lots shown on the plan. As recently as 1951, when the subdivision control law became effective in Rowley, it could not in any practical sense have been in existence as a way. All that appeared at the view were outlines of a ten foot roadway, once used by a vehicle or vehicles of unknown character, and ruts and a condition of impassability due to rain. Orchard Drive clearly does not rise even to the dignity of a rough country road, broken and sunken in spots, as is Bowlery Drive off which it leads. Obviously, the plaintiffs propose to make "division of a tract of land into two or more lots in such manner as to require provision for one or more new ways . . . to furnish access for vehicular traffic to one or more of such lots."

The decree is reversed and a decree is to be entered stating that the planning board of Rowley did not exceed its authority, and that no modification of its decision is required.

*So ordered.*