DALEY CONSTRUCTION CO., INC. *vs.* PLANNING BOARD OF RANDOLPH.

Norfolk. November 3, 1959. — December 17, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Subdivision Control. Municipal Corporations,* Waterworks. *Equity Pleading and Practice,* Decree, Subdivision control appeal.

G. L. c. 41, § 81M, inserted by St. 1953, c. 674, § 7, indicates that the Legislature's primary concern respecting subdivisions of land is that the lots therein have adequate access ways furnished with appropriate facilities and have sanitary conditions. [153–154]

The provision of G. L. c. 41, § 81M, inserted by St. 1953, c. 674, § 7, that the powers of a municipal planning board under the subdivision control law shall be exercised "with due regard . . . for securing adequate provision for water . . . in a subdivision" means securing

installation of an adequate system of water pipes in a subdivision rather than securing an adequate supply of water. [154]

The planning board of a town exceeded its authority under G. L. c. 41, § 81U, as amended through St. 1955, c. 324, when it unconditionally disapproved a proper plan of a subdivision of land with an adequate "water pipe layout" solely on the ground that the proposed development would impose new demands upon the water supply of the town and would accentuate an existing acute shortage of water therein. [155]

In a suit in equity under G. L. c. 41, § 81BB, as amended through St. 1955, c. 348, by way of appeal from a decision of a town's planning board which this court held exceeded the authority of the board in that it disapproved a proper plan of a land subdivision solely on the ground of inadequacy of the town's water supply, the decree after rescript should recite that the board exceeded its authority, should annul the board's decision, and should direct the board to take promptly further proceedings under the subdivision control law consistent with applicable statutes and this court's opinion. [156]

BILL IN EQUITY, filed in the Superior Court on January 25, 1957.

The plaintiff appealed from a final decree entered by *R. Sullivan, J.*

*Charles George*, for the plaintiff.

*William J. Carr*, Town Counsel, for the defendant.

CUTTER, J.   This is a bill in equity brought under G. L. c. 41, § 81BB (as amended through St. 1955, c. 348), by Daley Construction Co., Inc. (Daley), on January 25, 1957. It seeks relief from the disapproval by the planning board of Randolph (the board) under c. 41, § 81U (as amended through St. 1955, c. 324), of a plan for the subdivision of land. The case was referred to a master whose findings are summarized below.

Daley owns land shown on a subdivision plan dated December 11, 1956, which was filed with the board on that date "in compliance with the by-laws of the town . . . and the General Laws." The plan had previously been approved by the town highway surveyor, by the town board of health, and, as to layout only, by the town's board of water commissioners. The water pipe layout on the plan was adequate. The town had accepted the provisions of the subdivision control law, now found in G. L. c. 41, §§ 81K to

81GG, inserted by St. 1953, c. 674, § 7.   On January 14, 1957, after a public hearing before the board at which no objectors appeared the board disapproved the plan apparently in reliance upon § 81M.[1]   Daley seasonably and properly filed its appeal under c. 41, § 81BB.   The master's report (apart from the obscure reference, quoted above, to the "by-laws of the town") contains no mention of the existence or contents of any local rules or regulations adopted under G. L. c. 41, § 81Q, or otherwise, and, on this record, we do not know whether any rules and regulations have been adopted in Randolph, or, if some have been adopted, what they are.

The water commissioners of Randolph, Holbrook, and Braintree had determined that there was an acute shortage of water and lack of water pressure in those towns and that a fire hazard had been created.   The planning board was notified of this condition on July 31, 1956.   The master, after stating one of the issues as "[w]hether . . . the . . . board should approve a proper plan . . . when the . . . board has . . . notice . . . that there is an acute shortage of water and water pressure," concluded that the board

---

[1] Section 81M, inserted by St. 1953, c. 674, § 7, so far as relevant, reads: "The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is . . . put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas.   The powers of a planning board and of a board of appeal . . . shall be exercised with due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; for reducing danger to life and limb in the operation of motor vehicles; for securing safety in the case of fire, flood, panic and other emergencies; for insuring compliance with the applicable zoning ordinances or by-laws; for securing adequate provision for water, sewerage, drainage and other requirements where necessary in a subdivision; and for co-ordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivisions."

Section 81M was amended by St. 1957, c. 265, by the addition of the following sentence, "It is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board if said plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board pertaining to subdivisions of land; provided, however, that such board may, when appropriate, waive, as provided for in section eighty-one R, such portions of the rules and regulations as is deemed advisable."   This amendment, if declaratory of the existing law, tends to support our interpretation of § 81M.

"acted within the power given" to it by G. L. c. 41, § 81U. The master's report was confirmed and a final decree provided "that the decision of the . . . board . . . disapproving the . . . plan . . . was within . . . [its] jurisdiction . . . and that no modification of it is required." Daley has appealed.

1. No ground for denying approval of the plan, other than the water shortage, was mentioned in the master's report. The decree below, after a hearing de novo (see *Rettig* v. *Planning Bd. of Rowley*, 332 Mass. 476, 478–479), was not justified upon this record unless it was within the authority of the board to refuse approval of the plan on this ground.

The question here presented is thus whether a subdivision plan, admittedly "a proper plan" with an adequate "water pipe layout," approved by appropriate town officers and boards and filed "in compliance with the by-laws of the town" and applicable provisions of the General Laws, may be denied approval by a planning board under the subdivision control law, G. L. c. 41, §§ 81K–81GG, on the ground that its execution may accentuate an existing town water shortage. In effect, the board here has denied to the owner the opportunity to subdivide its land, not because of any impropriety in the proposed plan for its use, but because the supply of water for the town, possibly inadequate unless augmented from new sources, will be further depleted by use in the buildings to be constructed. The board's powers here asserted rest solely upon the provisions of the subdivision control law. In applying that statute the board relied on § 81M (see footnote 1, *supra*) and presumably, in view of the water shortage, principally upon the provision that the "powers of a planning board . . . shall be exercised with due regard . . . for securing safety in the case of fire, flood, panic and other emergencies . . . [and] adequate provision for water, sewerage, drainage and other requirements where necessary in a subdivision . . . ."

The relevant sections of the subdivision control law as revised in St. 1953, c. 674, § 7, and as later amended, have

received little judicial interpretation.[2]  The decided cases
are of slight assistance here.  Legislative history, however,
affords some guidance to interpretation of certain very
general, and somewhat ambiguous, provisions of the law.
The 1953 amendments were adopted largely upon the basis
of 1953 House Doc. 2249, the report of the special commis-
sion on planning and zoning (see Res. 1951, c. 55, and
Res. 1952, c. 89).  Section 81M is, with a minor exception
not here important, in the language recommended by the
special commission (see its report, pp. 27–28) about which
it commented (at p. 54), "Section 81M is wholly new.  It
states the purposes and objects of the law much as is done
in the zoning enabling act, so as both to assure its constitu-
tionality and aid in its interpretation.  *The only purposes
recognized are to provide suitable ways for access furnished
with appropriate municipal utilities, and to secure sanitary
conditions*" (emphasis supplied).  At p. 10, the commission
listed as two of the principal defects in the then existing
statute (to which its attention had been invited by members
of the bar) "3. It is not made sufficiently clear that the
application of the law is limited to regulating the design
and construction of ways in subdivisions, and some well-
intentioned but overzealous planning boards have attempted
to use their power of approving or disapproving plans of
proposed subdivisions to enforce conditions doubtless in-
tended for the good of the public, but not relating to the
design and construction of ways within subdivisions; and
*it is said that some town counsels [sic] have approved this
usurpation of power.* 4.   There are provisions in the law
which *seem to authorize more arbitrary action by planning
boards than is consistent with our ideal of a constitutional
government*" (emphasis supplied).  The commission also
stated (at pp. 11–12) as part of the "purpose of the bill as
now drawn" the following, "8. To clarify the language of

---

[2] See *Rettig* v. *Planning Bd. of Rowley,* 332 Mass. 476, 480–481; *Carey* v.
*Planning Bd. of Revere,* 335 Mass. 740;  1956 Ann. Survey Mass. Law, § 1.3.
See also *Bowker* v. *Worcester,* 334 Mass. 422, 431–432; *Coolidge* v. *Planning
Bd. of No. Andover,* 337 Mass. 648, 650; *Brush Hill Dev. Inc.* v. *Common-
wealth,* 338 Mass. 359, 361.

the act, especially in some particulars where *overzealous city planners have attempted to extend their authority to an extent greater than was intended by the framers of the law.* 9. To eliminate certain provisions that were thought to be unnecessarily arbitrary and to conform them to accepted principles of administrative law" (emphasis supplied).

The provisions of § 81M as enacted are consistent with the statements of the special commission quoted above. The statute's purpose is to protect "the safety, convenience and welfare of the inhabitants . . . by regulating the laying out and construction of ways . . . providing access to the several lots . . . and ensuring sanitary conditions . . . ."[3] The statute lists, among other criteria, principally considerations relating to street design as those to be weighed in the exercise of the powers of a planning board, e.g. "the provision of adequate access . . . for lessening congestion in such ways . . . for reducing danger to life and limb in the operation of motor vehicles . . . and for co-ordinating the ways . . . with each other and with the public ways . . . ." Even the consideration of "safety in the case of fire, flood, [or] panic" would seem to have primary reference to road design, although the suitability of lots and ways for use as such with reference to the danger of flooding may be material, a matter which we need not now consider. The general tenor of the entire section shows legislative concern primarily with (a) adequate ways to provide access furnished with appropriate facilities and (b) sanitary conditions of lots. Read in context, the words, "securing adequate provision for water," seem to us to mean installation of an adequate system of water pipes rather than an adequate supply of water, which, if not to be supplied from wells or other privately owned sources, is usually a matter of municipal water supply or water company action. It is not necessary, however, for us to determine whether, once the plan is

[3] See e.g. facts considered in *Stabile* v. *McCarthy*, 336 Mass. 399, 401–403. See also c. 41, § 81U, as amended by St. 1955, c. 324. The amendment of § 81U by St. 1958, c. 377, § 1, discussed in 1958 Ann. Survey of Mass. Law, § 14.10, pp. 153–154, is by the terms of § 2 of the 1958 statute largely inapplicable to plans theretofore filed.

approved, the owners of lots in the subdivision can later compel the provision to their premises of their share of the available town or water company water. Under our interpretation of § 81M, that matter is not presented by this record, although it has been argued that the practical difficulties of providing such water may justify the planning board's action. See discussion in *Brand* v. *Water Commrs. of Billerica,* 242 Mass. 223, 228; *Loring* v. *Commissioner of Pub. Works of Boston,* 264 Mass. 460, 464–465; *B & B Amusement Enterprises, Inc.* v. *Boston,* 297 Mass. 307, 308; *Harvard Furniture Co. Inc.* v. *Cambridge,* 320 Mass. 227, 229; *Reid Dev. Corp.* v. *Parsippany-Troy Hills,* 10 N. J. 229, 233–237; McQuillin, Municipal Corporations (3d ed.) § 34.89; Rhyne, Municipal Law, §§ 23–2, 23–5.

In view of the strong indications in the special commission's report (see p. 12) that the new statute was designed to "clarify . . . language . . . especially . . . where overzealous city planners have attempted to extend their authority" beyond the past legislative intention, we should not read into the general statement of legislative purpose in § 81M any grant of authority outside that clearly and specifically given by the statute. In the absence of more explicit statutory language, we interpret the authority of planning boards under the existing subdivision control law as not permitting disapproval of an otherwise proper plan on the ground that its execution would tax existing water sources. It is immaterial that somewhat comparable statutes elsewhere may be broader.[4] See Powell, Real

---

[4] Discussions of the statute and its predecessor in text authorities and legal periodicals are consistent with the interpretation which we adopt, although they do not deal directly with the precise question. They shed light, however, on the background of the adoption of the 1953 statute. See Hardy, Municipal Law, §§ 368–381; Johnson, New Subdivision Control Law, 1954 Ann. Survey of Mass. Law, §§ 2.1–2.10; McCarty, Municipal and Town Planning or Pre-emption? 34 Mass. L. Q. (No. 5) 3, and More about Planning Boards and Zoning Acts, 35 Mass. L. Q. (No. 2) 8 (both dealing with prior statute); Nichols, A Defense of the Subdivision Control Law, 36 Mass. L. Q. (No. 2) 38; Bolton, More about Planning Boards, 36 Mass. L. Q. (No. 3) 40; Muldoon, Planning Boards and Sub-Division Control, 37 Mass. L. Q. (No. 2) 45; McCarty, Planning Boards and Sub-Division Control Again, 40 Mass. L. Q. (No. 4) 23; Tilden, Planning or Plodding, 41 Mass. L. Q. (No. 3) 26; Johnson, Notes on Planning and Zoning, 43 Mass. L. Q. (No. 3) 20.

Property, § 866; Melli, Subdivision Control in Wisconsin, 1953 Wis. L. Rev. 389, 393, 398, 401, et seq.; note, 65 Harv. L. Rev. 1226–1237; note, 28 Ind. L. J. 544–573. See also annotation, 11 A. L. R. 2d 524.

The disapproval of the subdivision plan was unconditional. It in effect denied to Daley, because it did not have even conditional approval of the plan, any basis for proceedings to require the appropriate municipal water supply or water company to furnish water to the disapproved subdivision. The record thus presents no question whether a planning board under § 81U may require that, before lots are sold or buildings constructed, arrangements be made to connect the water pipe system within a subdivision with pipes leading to a proper water supply. We determine merely that the Legislature, by the subdivision control law, thus far has not given to planning boards the power unconditionally to disapprove a subdivision plan because its execution would impose new demands upon a community's existing water supply.[5]

2. The decree is reversed. A new decree is to be entered (a) stating that the planning board exceeded its authority in refusing approval of Daley's plan on the ground of the water shortage in the town, (b) annulling the decision of the board, and (c) directing the board to take promptly further proceedings under the subdivision control law consistent with applicable statutes and with this opinion. If the board had approved the plan, it might have included in its approval various provisions consistent with § 81U, as amended by St. 1955, c. 324 (see footnote 3, *supra*). We do not undertake to state what those provisions should be.

*So ordered.*

---

[5] As to practical problems confronting rapidly growing communities in connection with water and other municipal services, see discussion in Muldoon, The Practical Background of the Zoning and Planning Problems of the Present and Future, 43 Mass. L. Q. (No. 2) 13.