GEORGE H. CLARK & another *vs.* BOARD OF WATER AND SEWER COMMISSIONERS OF NORWOOD & another.[1]

Norfolk.   February 8, 1968. — February 29, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Sewer.   Municipal Corporations,* Sewer.   *Mandamus.   Words,* "Shall," "May."

Where it appeared in a mandamus proceeding against the sewer commissioners of a town that the petitioners had made proper application for connection of a proposed large apartment house complex with a sewer and that there was then adequate sewer capacity to serve the proposed buildings, the connection was required by G. L. c. 83, § 3, and the petitioners were entitled as of right to issuance of the writ to compel it, even if the sewer capacity might become inadequate upon addition of further connections which were contemplated for the future but were not shown to be the subject of any legal or equitable commitment of the town or the board.

[1] The town manager.

PETITION filed in the Superior Court on April 6, 1967.

Following the report of an auditor whose findings were to be final, a motion by the petitioners for judgment on the report was denied by *Ford*, J., and the petitioners excepted.

*Stanley M. Jacks* for the petitioners.

*Walter J. Gotovich*, Town Counsel, for the respondents.

WHITTEMORE, J. The petitioners seek a writ of mandamus to require the respondents, the selectmen of Norwood acting as sewer commissioners, to issue a permit for a sewer connection. The petitioners own about thirty-six acres on Nahatan Street on which they propose to build a 318 unit apartment house complex, with an estimated population of from 700 to 1,000.

An auditor, whose findings were final, in a report filed July 28, 1967, found that proper application for a permit had been made and a permit had been refused for the stated reason that "the Nahatan Street sewer is inadequate to accommodate . . . the development." The auditor also found that the petitioners have "the right to build the approved dwellings," and that the decision of the sewer commissioners "was not primarily based on any real apprehension of present danger to the town . . . but upon considerations differing among the individual members."[2] He also found that "The connection of the . . . apartment complex . . . would not overload . . . [the] sewer line anywhere in the vicinity, but might, in conjunction with other building contemplated, such as a Junior High School, evidently create an under-capacity over a mile away in the Town Square area." Subsidiary findings show a reasonably adequate present capacity in the Nahatan Street sewer and reasonable means of increasing sewer capacity.[3] The auditor concluded that the connection should have been made.

---

[2] At one meeting one of the sewer commissioners said, "I'm sorry but we just don't want apartment houses." Certain preliminary steps were initiated to have the land taken for conservation purposes.

[3] "For a period of about five years ending about a year ago the Westwood High School with over 1000 students was connected and no difficulties were encountered." At a selectmen's meeting on May 10, 1966, instructions were given for the town engineer to prepare a plan "with the idea of trying to prove that it will overtax our present utilities." The engineer's report was

The petitioners' motion for judgment on the auditor's report was denied. This was error. General Laws c. 83, § 3, provides: "The board or officers of a city or town having charge of the repair and maintenance of sewers may, upon request of the owner of land and payment by him of the actual cost thereof, construct a particular sewer from the street line to a house or building. A town may appropriate money for connecting estates within its limits with common sewers, and no estate shall, in any year in which such an appropriation is made, be connected with a common sewer except in the manner hereinafter provided. . . . If the board of health of a town making such appropriation shall order land abutting upon a public or private way in which a common sewer has been laid to be connected with such sewer, *or if the owner of such land shall make to the board or officer having charge of the maintenance and repair of sewers application to connect his land with a common sewer, such board or officer shall make such connection*" (emphasis supplied). The auditor found that the town had made an appropriation under the statute.

The word "shall" in this statute is not to be construed as "may." See *Johnson* v. *District Atty. for the No. Dist.* 342 Mass. 212, 215. Doubtless, if the connection would at once overload the sewer and risk serious flooding and danger of injury to persons or property, immediate compliance with the mandate of the statute would not be required. We need not determine the duties of the town and the rights of a lawfully acting landowner in such a case. See discussion and cases cited in *Daley Constr. Co. Inc.* v. *Planning Bd. of Randolph,* 340 Mass. 149, 154–155.

---

that on calculations "based in part on properties that are not but might be connected . . . , the infiltration of water in the line, and the practice of emptying water from cellars into the sewer in times of flood, that the 'theoretical load' was presently too great for the Town Square area." The board in connection with this report recalled some manhole flooding in the Town Square area during the 1955 hurricane freshet. The auditor found that if a problem arises the town could (1) improve the Town Square area sewer (for several years it had no annual maintenance although that is good practice); (2) build a proposed interceptor sewer for about one half of which the 1967 town meeting had appropriated the money; or (3) build a 200–300 foot line to Oldham School to take all of upper Nahatan Street off the line.

The sewer commissioners are not empowered to postpone presently sought connections to give precedence to connections contemplated for the future. There was no finding that the board or the town is legally or equitably committed to other connections.

Reasonable sewer capacity being shown to serve the petitioners' buildings, they had a right to the connections. This was a present legal right and the writ of mandamus could not have been refused as matter of discretion. *Massachusetts Soc. of Graduate Physical Therapists, Inc.* v. *Board of Registration in Medicine,* 330 Mass. 601, 605–606.

The exceptions are sustained. The order denying the motion for judgment is vacated. Judgment is to enter for the issuance of the writ provided that, if the Superior Court shall determine that due to connections, if any, made since the auditor's report a connection under the mandate will risk immediate serious flooding and danger of injury to persons or property, the effective date of the mandate may be postponed for a reasonable time to permit essential additional facilities to be promptly constructed.

*So ordered.*