CONRAD P. RICHARD *vs.* PLANNING BOARD OF ACUSHNET.

Bristol.   April 11, 1980. — July 7, 1980.

Present: HALE, C.J., BROWN, & KASS, JJ.

*Subdivision Control.*

A revised plan showing lots of sufficient frontage and area to comply with
     changes in the applicable zoning requirements, fronting on ways
     shown on a plan previously approved in accordance with the Subdivi-
     sion Control Law, disclosed a subdivision within the meaning of G. L.
     c. 41, § 81L, requiring approval, notwithstanding exception (b) of
     § 81L, where the approved ways had not been built at the time the
     revised plan was submitted to the planning board and there was no
     assurance as required by § 81U that they would be built. [218-220]

CIVIL ACTION commenced in the Superior Court on
May 25, 1978.

The case was heard by *Black,* J., a District Court judge
sitting under statutory authority.

*Donald J. Fleming* for the plaintiff.

*Ferdinand B. Sowa* for the defendant.

KASS, J.   Following refusal by the planning board of
Acushnet (board) on May 16, 1978, to endorse the plan filed
by the plaintiff "approval under the subdivision control law
not required" pursuant to G. L. c. 41, § 81P, he appealed
from the board's action to the Superior Court under G. L.
c. 41, § 81BB.   The plaintiff (Richard) claimed entitlement
to a § 81P endorsement on the ground that he was merely
altering the boundaries of lots on an existing approved sub-
division plan so as to create larger lots than those originally
shown.   This he had to do in order to comply with changes
in the minimum lot area requirements of the Acushnet zon-

ing by-law made since the approval of the original plan.[1]
Richard took the position that his new plan did not disclose
a subdivision because the lots drawn all had the requisite
frontage on "a way shown on a plan theretofore approved
and endorsed in accordance with the subdivision control
law." G. L. c. 41, § 81L, definition of the word "Sub-
division", exception (b). The judge determined that the
board acted within its authority in refusing a § 81P endorse-
ment. We affirm.

We summarize the facts found by the judge, by which we
are bound unless they are clearly erroneous, Mass.R.Civ.P.
52(a), 365 Mass. 816 (1974), and which in this case are am-
ply supported by the record. Acushnet first voted to estab-
lish a planning board at a town meeting held March 9,
1957, and provided that its selectmen were authorized to
act as a planning board until members of the newly con-
stituted planning board were elected. No election took
place until March, 1959, and the first documented sign of
life of the new planning board did not appear until March
23, 1960, when it made the first written record of its pro-
ceedings in the form of minutes of an organizational
meeting.

Prior to that organizational meeting, on February 29,
1960, the selectmen of Acushnet, apparently purporting to
act as the planning board, endorsed approval of a plan en-
titled "Crandon Acres" showing a subdivision of twenty-six
lots and a layout of streets called Crandon Drive, Berry
Place and Vine Court. Those streets have not been built to
date, nor have houses been built upon any of the lots, except
in a location not material to this action. Crandon Drive,
Berry Place and Vine Court on the new plan are to this day
no more than paper streets.

Richard applied for his "subdivision approval not re-
quired" endorsement on May 4, 1978, i.e. eighteen years

---

[1] The grace periods under G. L. c. 40A, § 6, inserted by St. 1975,
c. 808, § 3, had long since expired. See § 7A of The "old" Zoning Enabl-
ing Act as appearing in G. L. c. 40A prior to its comprehensive amend-
ment by St. 1975, c. 808, § 3.

after the approval of the original plan. His new plan was a redivision of lots 7 through 10 and 12 through 20 shown on the 1960 plan. The locus of the new 1978 plan has in the intervening time been the site of gravel excavation and it is now located twenty-five feet below the grade of the surrounding land.

As stated by the parties, the fundamental question is whether a plan showing lots of sufficient frontage and area to comply with then applicable zoning requirements, fronting on ways shown on a plan previously approved and endorsed in accordance with the Subdivision Control Law, is exempt from further subdivision control (because by definition the plan does not disclose a "subdivision" as that word is defined in § 81L), even though those ways have never been built and exist on paper only. Put in that fashion, the question is not susceptible to an answer of uniform application because it fails to take into account significant factual variables.

For example, if the new plan showed lots of lawful dimensions abutting ways on an earlier approved plan, but the earlier approved plan contained conditions which had not been met, then the new plan would not be exempt from subdivision control and would not be entitled to an "approval not required" endorsement under § 81P. *Costanza & Bertolino, Inc.* v. *Planning Bd. of No. Reading*, 360 Mass. 677, 678-681 (1971). In that case, a covenant entered into by the developer pursuant to G. L. c. 41, § 81U, required him to complete the construction of ways and installation of the municipal services within two years from the date of the execution of the convenant. The developer had not done so and the court held that the planning board had properly declined to make a § 81P endorsement.

It follows that in a case where the landowner has filed a bond, or deposited money or negotiable securities, or entered into a covenant to secure the construction of ways and installation of municipal services, and a new plan is presented which merely alters the number, shape and size of the lots, such a plan is entitled to endorsement under § 81P,

"provided every lot so changed still has frontage on a public way . . . of at least such distance, if any, as is then required by . . . by-law . . ." G. L. c. 41, § 81O; and provided, of course, that conditions for execution of the plan have not already been violated, as was the case in *Costanza & Bertolino*.

Indeed, the provisions of the fifth paragraph of § 81U concerning securing of completion of the ways and municipal services of a subdivision plan are mandatory. For all that appears, the Acushnet selectmen, acting as the interim planning board, did not articulate the manner in which the ways were to be constructed, what municipal services were to be furnished or the standards to which that work was to be done. Reference to the regulations of the planning board is of no help because those were not adopted until some three years after the endorsement of the original plan. We are of the opinion that exception (b) of the definition of "Subdivision" in § 81L requires either that the approved ways have been built, or that there exists the assurance required by § 81U that they will be built. Otherwise, the essential design of the Subdivision Control Law — that ways and municipal services shall be installed in accordance with specific municipal standards — may be circumvented. *Rettig* v. *Planning Bd. of Rowley*, 332 Mass. 476, 480 (1955). *Costanza & Bertolino, Inc.* v. *Planning Bd. of No. Reading*, 360 Mass. at 679-680. Access which is safe and convenient and adequate provisions for water, sewerage, drainage, and underground utility services are among the stated legislative purposes. G. L. c. 41, § 81M. See *Daley Constr. Co.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 152-156 (1959); *Dolan* v. *Board of Appeals of Chatham*, 359 Mass. 699, 701 (1971). We are to interpret the subdivision control statutes so as to further that goal. *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801, 807 (1978). In the instant case, where the locus is twenty-five feet below the surrounding land, the municipal concern about the safety of the grades of the roads giving access to the lots and about adequate drainage facilities is particularly compelling. Compare

*Green* v. *Board of Appeal of Norwood,* 358 Mass. 253, 262-263 (1970), which deals with an unrecorded agreement unrelated to statutory requirements or regulations of the planning board.

On the view we take of the case, it is not necessary to decide the other issues raised by the plaintiff.

*Judgment affirmed.*