SYMES DEVELOPMENT & PERMITTING, LLC vs. FERGUSON, MISC 21-000021

































 
 SYMES DEVELOPMENT & PERMITTING, LLC, Plaintiff, v. KRISTEN FERGUSON, BURTON FLINT, NATHAN BOSDET, ALLEN SAYEGH, KATE MCENEANEY, HALEY ORVEDAL and LINDA MILLER, in their capacities as members of the TOWN OF CONCORD PLANNING BOARD, and the TOWN OF CONCORD, Defendants
 MISC 21-000021 
 JUNE 23, 2021
MIDDLESEX, ss.
SPEICHER, J.
DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT














 Symes Development & Permitting, LLC ("Symes") challenges certain conditions imposed on its proposed 18-lot residential subdivision by the defendant members of the Concord Planning Board ("Planning Board"). The challenged conditions relate to the required reservation of land in the subdivision for parks purposes and for affordable housing purposes, to a requirement to obtain a related special permit prior to endorsement of the approved subdivision plan, and to certain restrictions imposed on the ability of the developer to obtain releases of security posted to secure construction of subdivision improvements.





 As there is no dispute as to any material facts, the parties filed cross-motions for summary judgment. A hearing on the cross-motions was held before me on June 16, 2021, after which I took the motions under advisement. 





 For the reasons that follow, I find and rule that, with respect to the challenged conditions, the Planning Board exceeded its authority by prohibiting the construction of subdivision improvements other than buildings on the lots reserved for park purposes; by reserving lots for affordable housing purposes without compensation; by withholding endorsement of the approved plan pending approval of a special permit; and by unduly restricting the statutory rights of the applicant with respect to changes to and releases of security. Accordingly, Symes's motion for summary judgment will be allowed in part, and the Planning Board's cross-motion will be allowed in part. 





FACTS 





 The following material facts are found in the record [Note 1] for purposes of Mass. R. Civ. P. 56, and are undisputed for the purposes of the pending cross-motions for summary judgment: 





 Symes proposes to develop an eighteen-lot residential subdivision on an approximately 8-acre parcel of land it has under agreement, located on Main Street in Concord. In March, 2020, Symes submitted a preliminary subdivision plan, which was approved by the Planning Board. In June, 2020 Symes submitted a definitive subdivision plan based on its approved preliminary plan. Symes did not request waivers of any of the Planning Board's Subdivision Rules and Regulations in connection with the submitted definitive subdivision plan. 





 The Planning Board opened its public hearing on the definitive subdivision plan application on September 8, 2020, continued the hearing six times, and closed the hearing on December 8, 2020. At a public hearing on December 22, 2020, following deliberation, the Planning Board voted to approve the definitive subdivision plan with conditions, by a vote of 4-2. The Planning Board issued its written decision, dated December 30, 2020, which was filed with the town clerk on December 30, 2020.





 Among the conditions imposed by the Planning Board in its decision was a requirement that Symes reserve two lots, Lots A1 and 6, plus a five-foot wide public access easement over Lot 13, for public park purposes for a period of three years from the date the Planning Board endorses the plan. Pursuant to Section 6.20 of the Subdivision Rules and Regulations, which authorizes the Planning Board to make a reservation for "municipal purposes," during the three-year reservation period Symes would be prohibited from making any "street, utility, building or other improvements" on any of the reserved land without prior approval of the Planning Board. 





 The Planning Board's decision also imposed a condition requiring that Lots 7, 13 and 16 be reserved for affordable housing purposes, with identical restrictions against the making of any improvements, and also for a period three years. This condition was imposed under the authority of Section 6.21 of the Subdivision Rules and Regulations, which in turn is authorized by a general town bylaw, Article 61, adopted at the 1992 Annual Town Meeting. This reservation, like the one for park purposes, provides for no compensation for the three-year reservation period in the absence of a decision by the Town to actually acquire the lots. 





 Another condition imposed by the decision is that the Planning Board will withhold its endorsement of the approved definitive subdivision plan unless and until a special permit for earth removal is issued by the Concord Zoning Board of Appeals for work required to be done as part of the development of the proposed subdivision. Symes has applied for the earth removal special permit, and its application is currently pending before the Concord Zoning Board of Appeals. 





 Finally, in its decision the Planning Board imposed restrictions on the ability of Symes to obtain releases of security posted to secure construction of the subdivision improvements. These restrictions are described fully below. 





 Symes filed a timely complaint on January 15, 2021 seeking review of certain conditions imposed by the Planning Board in its decision. 





DISCUSSION 





 "Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law." Ng Bros. Constr. v. Cranney, 436 Mass, 638, 643644 (2002). "The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact." Id. at 644. In determining whether genuine issues of fact exist, the court must draw all inferences from the underlying facts in the light most favorable to the party opposing the motion. See Attorney Gen. v. Bailey, 386 Mass. 367 , 371, cert. denied, 459 U.S. 970 (1982). Whether a fact is material or not is determined by the substantive law, and "an adverse party may not manufacture disputes by conclusory factual assertions." Ng Bros. Constr. v. Cranney, supra, 436 Mass. at 648. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When appropriate, summary judgment may be entered against the moving party and may be limited to certain issues. Community Nat'l Bank v. Dawes, 369 Mass. 550 , 553 (1976). 





 In reviewing appeals brought pursuant to G. L. c. 41, § 81BB, the trial judge hears the matter de novo, makes independent findings of fact and, on the facts so found, determines whether the plan submitted to the planning board conforms to the reasonable rules and regulations of the board. Rettig v. Planning Bd. of Rowley, 332 Mass. 476 , 478, (1955). "[T]he developer has the burden of proving that the planning board has exceeded its authority in disapproving the plan." Fairbairn v. Planning Bd. of Barnstable, 5 Mass. App. Ct. 171 , 173 (1977). While a trial judge may not substitute his or her own judgment for that of the planning board, see Strand v. Planning Bd. of Sudbury, 5 Mass. App. Ct. 18 ,21 (1977), the Board's decision will not be sustained where it has acted outside of its authority under the subdivision control law. 





 Section 81 M of G. L. c. 41 "requires approval of any subdivision plan which conforms to the ... reasonable rules and regulations of the planning board." See Mac-Rich Realty Constr., Inc. v. Planning Bd. of Southborough, 4 Mass. App. Ct. 79 , 84-85 (1976). For a denial to be upheld, the planning board must "state in detail wherein the plan does not conform to the rules and regulations of the planning board or the recommendations of the health board or officer[.]" G. L. c. 41, § 81U. A court's review of such a denial "must be confined to the reasons for disapproval of the subdivision plan stated by the planning board." Canter v. Planning Bd. of Westborough, 4 Mass. App. Ct. 306 , 307 (1976).





 An approval of a definitive subdivision plan may not be subject to conditions where there is "in the statute...no basis for the conditions imposed by the [planning] board." Castle Estates, Inc. v. Park and Planning Bd. of Medfield, 344 Mass. 329 , 333 (1962). A planning board may not impose conditions that are prohibited by or otherwise not authorized by G. L. c. 41, § 81M. Id. Conditions imposed by a planning board must be "related to an issue within the scope of concern of the subdivision control law...." Collings v. Planning Bd. of Stow, 79 Mass. App. Ct. 447 , 455 (2011). The conditions which may be imposed are limited to those that "provide suitable ways for access furnished with appropriate municipal utilities, and to secure sanitary conditions..." Daley Construction Co. v. Planning Bd. of Randolph, 340 Mass. 149 , 153 (1959) quoting from the report of the special commission on planning and zoning prior to adoption of Section 81M. The "principal object [of the Subdivision Control Law] is to ensure sufficient access to the lots within the subdivision and to provide them with municipal services." Dolan v. Bd. of Appeals of Chatham, 359 Mass. 699 , 701 (1971). 





 In the present action, there are no material facts in dispute. The question before the court in this appeal brought pursuant to G. L. c. 41, § 81BB and also seeking a declaratory judgment pursuant to G. L. c. 231A, § 1, is whether, and to what extent, certain conditions imposed by the Planning Board on its approval of the plaintiff's subdivision exceeded the powers of the Planning Board either under the Subdivision Control Law or the Planning Board's own rules and regulations. 





I. THE CONDITION REQUIRING THE RESERVATION OF LOTS FOR PARK PURPOSES EXCEEDED THE PLANNING BOARD'S AUTHORITY BY PROHIBITING IMPROVEMENTS OTHER THAN BUILDINGS. 





 In its decision approving the subdivision, the Planning Board imposed a condition requiring the reservation of Lots A1 and 6 for public park purposes, and the reservation of a five-foot wide access easement across Lot 13 to Lot A1. Section 6.20 of the Subdivision Rules and Regulations authorizes the Planning Board to make such a designation "for municipal purposes" for a three-year reservation period, during which the Town may elect to acquire the reserved land for just compensation. The rule further provides that during the reservation period "no street, utilities, building, or other improvements" may be made within the boundaries of the reserved land "without the Board's approval..." 





 Symes contends that this condition exceeded the Planning Board's authority by requiring the reservation for three years without just compensation, and by prohibiting the construction of non-building improvements without the Planning Board's prior approval. 





 The reservation of land in a subdivision for park purposes is expressly permitted by the Subdivision Control Law. The applicable provisions are as follows: 





 [N]o planning board shall impose, as a condition for the approval of a plan of a subdivision, that any of the land within said subdivision be dedicated to the public use, or conveyed or released to the commonwealth or to the county, city or town in which the subdivision is located, for use as a public way, public park or playground, or for any other public purpose, without just compensation to the owner thereof. 





 G. L. c. 41, § 81Q. 





 Before approval of a plan by a planning board, said board shall also in proper cases require the plan to show a park or parks suitably located for playground or recreation purposes or for providing light and air and not unreasonable in area in relation to the area of the land being subdivided and the prospective uses of such land, and if so determined said board shall by appropriate endorsement on the plan require that no building may be erected on such park or parks for a period of not more than three years without its approval. 





 G. L. c. 41, § 81U.





 Under these provisions of the Subdivision Control Law, the Planning Board is expressly authorized to require the reservation of land in a proposed subdivision, with just compensation, to make the reservation for up to three years, and to prohibit the erection of buildings during that period. It appears that the statute contemplates that the requirement for just compensation does not apply to the up-to three-year period during which the Town is permitted to make the determination whether it will in fact choose to acquire the reserved land and go through the required steps to consummate the purchase of the land. Chamseddine v. Zoning Bd. of Appeals of Taunton, 70 Mass. App. Ct. 305 , 307 (2007). 





 However, while the reservation of lots for park purposes does not violate the just compensation requirements of G. L. c. 41, § 81Q, because the three-year reservation period is expressly permitted by Section 81U, the blanket prohibition against improvements other than the erection of a building during that period does exceed the Planning Board's authority under the Subdivision Control Law.





 G. L. c. 41, § 81U allows a planning board to "require that no building may be erected" on the reserved land during the three-year reservation period without the planning board's approval. The Planning Board, in its decision, has broadened this prohibition to prohibit "street, utilities, building, or other improvements" during the reservation period without the Planning Board's approval. It is undisputed that the subdivision plan as approved, calls for grading and installation of utilities on the lots required by the Planning Board to be reserved for park purposes. Other than the prohibition against erecting a building, to the extent the condition requires prior Planning Board approval of non-building subdivision improvements, such as grading improvements and installation of utilities or drainage structures, the condition imposed by the Planning Board exceeded its statutory authority. 





II. THE CONDITION REQUIRING THE RESERVATION OF LOTS FOR AFFORDABLE HOUSING PURPOSES EXCEEDED THE PLANNING BOARD'S AUTHORITY. 





 On the authority of a general town bylaw, Article 61, as adopted at the April, 1992 Town Meeting, the Planning Board adopted Section 6.21 of the Subdivision Rules and Regulations. Section 6.21 authorizes the Planning Board to require the reservation of lots in a subdivision for a period of three years for affordable housing purposes. During the three-year period, the Town or the Town's designee may exercise a right to purchase, and the rule provides a procedure for resolving disagreements as to the fair market value to be paid to the owner. Neither Article 61 nor Section 6.21 requires or authorizes any payment to the subdivision owner for the restriction on the reserved lots during the three-year period if the Town or its designee does not exercise the right to purchase. Under the authority of Article 61 and Section 6.21 of the Subdivision Rules and Regulations, the Planning Board required the reservation of Lots 7, 13 and 16 in the proposed subdivision for a period of three years from the date of endorsement of the plan by the Planning Board. 





 Symes argues that Article 61, which requires the Planning Board to reserve lots for affordable housing purposes, exceeds the authority of the Town under the Home Rule Amendment, Article 89, § 6 of the Amendments to the Massachusetts Constitution. Symes argues further that a reservation of lots for affordable housing purposes is not one of the "any other public purpose(s)" for which a planning board may adopt rules requiring reservations of land under G. L. c. 41, § 81Q. Finally, Symes argues that the reservation of lots for affordable housing purposes without compensation during the three-year period of reservation is not authorized by G. L. c. 41, §§ 81Q and 81U. The Planning Board argues that Article 61 and Section 6.21 of the Subdivision Rules and Regulations are consistent with the authority granted by the Subdivision Control Law. 





 The authority of towns to enact bylaws under the police powers reserved to them under the Home Rule Amendment is not unlimited. Towns may enact "by-laws as an exercise of their independent police powers but these powers cannot be exercised in a manner which frustrates the purpose or implementation of a general or special law enacted by the Legislature in accordance with ... [art. 89, § 8, of the Amendments to the Constitution, which reserves to the Legislature the authority to enact laws affecting cities and towns]." Board of Appeals of Hanover v. Housing Appeals Comm. in the Dept. of Community Affairs, 363 Mass. 339 , 360 (1973). For instance, a municipality's zoning power is "one category of the more general police power, concerned specifically with the regulation of land use," and an exercise of its zoning power must adhere to the procedural requirements of G. L. c. 40A. Rayco Inv. Corp. v. Bd. of Selectmen of Raynham, 368 Mass. 385 , 392 n 4 (1975).





 So too, under the Subdivision Control Law, the Home Rule Amendment does not give municipalities license to adopt bylaws under their general police power that do not adhere to the procedures and substantive limitations imposed by the Subdivision Control Law, a comprehensive law imposing procedures and substantive requirements for the adoption of rules and regulations governing the subdivision of land and the laying out of ways in conjunction with the subdivision of land. "[T]he power of a planning board is limited to the authority 'clearly and specifically given by the statute.'" Collings v. Planning Bd. of Stow, supra, 49 Mass. App. Ct. at 454, quoting in part, Daley Constr. Co., Inc. v. Planning Bd. of Randolph, supra, 340 Mass. at 155. A town has no inherent power to expand a planning board's authority with respect to the subdivision of land beyond that granted to it by the Subdivision Control Law. 





 In this case, as argued by Symes, the statute does not "clearly and specifically" give the Town or the Planning Board authority to require a subdivision developer to reserve lots in a subdivision for affordable housing purposes. Notwithstanding the provision in Section 81Q that a planning board may require the reservation of land in a subdivision "for use as a public way, public park or playground, or for any other public purpose," such "other public purpose" must be related to the provision of subdivision improvements. "A planning board does not have a roving commission. 'The only purposes recognized [by § 81M] are to provide suitable ways for access furnished with appropriate municipal utilities, and to secure sanitary conditions.'" Sealund Sisters, Inc. v. Planning Bd. of Weymouth, 50 Mass. App. Ct. 346 , 351 (2000), quoting from Daley Constr. Co., Inc. v. Planning Bd. of Randolph, supra, 340 Mass. at 153. The commendable purpose of providing affordable housing is not one related to the provision of ways for access furnished with appropriate municipal utilities as authorized by the Subdivision Control Law. 





 Moreover, even if the provision allowing reservation of lots for other public purposes" were construed to include affordable housing, the reservation of land in a subdivision for any allowed purpose may not be required without just compensation. Unlike the reservation for park purposes, for which Section 81U specifically allows a three-year reservation for time to implement the acquisition of property for park purposes, no such provision is made in Section 81U, or elsewhere in the statute, for reservation of land under Section 81Q for "other public purposes." 





 Although the reservation of three lots for affordable housing purposes provides for just compensation in the event that the Town or its designee elects to purchase the lots within the three-year reservation period, neither Article 61 of the Town's bylaws nor Section 6.21 of the Subdivision Rules and Regulations provide for any compensation for the three-year reservation period in the event that the Town or its designee elects not to purchase the reserved lots. The reservation is thus effectively a free option to purchase taken by the Town without compensation. An option to purchase is an enforceable property right. Tucker v. Connors, 342 Mass. 376 , 381-382 (1961). Like an option to purchase, the reservation imposed by the Planning Board requires the current owner to hold the lots, not to build anything on them inconsistent with the option, and keeps the lots off the market for at least three years, but without any payment for these restrictions on ownership. Nothing in the Subdivision Control Law authorizes such a restriction on ownership without compensation. "A planning board may not impose, as a condition of its approval, a requirement that any land within a subdivision be conveyed for any public purpose (in the absence of just compensation to the owner)." Young v. Planning Bd. of Chilmark, 402 Mass. 841 , 845 (1988). The reservation of what amounts to an uncompensated three-year option to purchase violated this limitation on the Planning Board's authority. 





 Furthermore, as written in the Planning Board's decision, the reservation actually is for an indeterminate period of time and may well exceed three years. The three-year reservation, as provided for in Section 6.21.4 of the Subdivision Rules and Regulations, starts to run from the date the Planning Board endorses the plan. In Condition No. 13 of its decision, the Planning Board requires that the applicant must receive and record a decision granting it an earth removal special permit under the Town's zoning bylaw before the Planning Board will endorse the plan. There is no dispute as to the fact that, although Symes has applied for the earth removal special permit, it has not been approved and the timing of its approval, assuming it is approved, is uncertain. Accordingly, the reservation of three lots, without compensation for the period of the reservation, is for an indeterminate and indefinite period of time. Local enactments that prohibit the use of private property for an indefinite period of time "do not serve a permissible public purpose, and are therefore unconstitutional." Zuckerman v. Town of Hadley, 442 Mass. 511 , 520 521 (2004) (invalidating zoning bylaw controlling rate of development). 





III. THE CONDITION REQUIRING APPROVAL OF A SPECIAL PERMIT PRIOR TO ENDORSEMENT OF THE SUBDIVISION PLAN EXCEEDED THE PLANNING BOARD'S AUTHORITY. 





 As is noted above, in Condition No. 13 of its decision, the Planning Board provided that it would withhold endorsement of the definitive subdivision plan until Symes receives a final approval of an earth removal special permit from the Board of Appeals, and records the special permit. The parties agree that an earth removal special permit is another approval that Symes will need in order to lawfully construct the subdivision. Symes argues, however, that the Planning Board's authority does not extend to withholding endorsement of an approved and compliant subdivision plan until other approvals are acquired. 





 A planning board may generally require that a subdivision plan comply with the requirements of a zoning bylaw. A planning board's subdivision rules and regulations "may require compliance with the requirements of existing zoning ordinances or by-laws..." G. L. c. 41, § 81Q. However, a planning board may not adopt regulations related to the subjects of zoning, such as "size, shape, width, frontage or use of lots within a subdivision," nor may a planning board adopt rules and regulations that "require referral of a subdivision plan to any other board or person prior to its submission to the planning board." Id. Furthermore, a planning board, upon the expiration of the twenty-day appeal period following its approval of a plan, without an appeal having been filed, or upon the conclusion of an appeal, is obligated to endorse the plan as approved. "[T]he planning board shall cause to be made upon the plan a written endorsement of its approval." G. L. c. 41, § 81V. 





 The withholding of endorsement of an approved plan until the applicant has obtained a special permit from the zoning board of appeals violates the planning board's obligation to endorse a plan that it has approved as being compliant with its rules and regulations. Should the special permit ultimately be denied, the planning board, under the condition as written, would withhold its endorsement indefinitely from a plan that it has already determined complies with the Subdivision Rules and Regulations. This not only makes no sense, it is also impermissible, as the Supreme Judicial Court has observed in another statutory context. "It would make little practical sense to condition the application for one such approval...on the successful application for another approval." Mahajan v. Department of Environmental Protection, 464 Mass. 604 , 622 (2013). The condition also violates the prohibition in Section 81Q against requiring "referral of a subdivision plan to any other board or person prior to its submission to the planning board." Although the requirement imposed by the Planning Board was not "before submission," it nevertheless required submission to another board prior to final action by the Planning Board, something it has no authority to do under the statute. The Planning Board has no authority to cede to another town board the authority to determine whether the Planning Board will endorse a subdivision plan that complies with the Planning Board's Subdivision Rules and Regulations. Accordingly, Condition No. 13 exceeded the Planning Board's authority.





IV. THE LIMITATIONS ON PERFORMANCE BOND RELEASES IMPOSED BY THE PLANNING BOARD EXCEEDED THE PLANNING BOARD'S AUTHORITY. 





 Symes contests the Planning Board's imposition of limitations on its ability to select and vary the security for the construction of subdivision improvements in certain respects. Condition No. 48 of the Planning Board's decision provides in relevant part: 





 The Board may, at its discretion, grant up to three (3) partial releases from the required Performance Guarantee for partial completion of improvements provided that: 





 ...





 c. No partial release of the Performance Guarantee shall be granted until the Board has received written verification from the CPW Engineering Division that substantially more than fifty (50) percent of the required improvements have been completed satisfactorily. 





 d. No partial release shall reduce the security by more than fifty (50) percent of the amount being held at the time the release is requested. 





 Section 81U of the Subdivision Control Law provides a mechanism for provision of security for the construction of approved subdivision improvements. As Justice Kass has noted, "[i]ndeed, the provisions of the fifth paragraph of § 81U concerning securing of completion of the ways and municipal services of a subdivision plan are mandatory." Richard v. Planning Bd. of Acushnet, 10 Mass. App. Ct. 216 , 219 (1980). Those mandatory provisions describe four different methods for securing the construction of the subdivision improvements: bond; deposit; restrictive covenant; and tri-party agreement between the developer, the town and the developer's lender. The statute explicitly provides, with respect to these four methods, that the "method or combination of methods may be selected and from time to time varied by the applicant." G. L. c. 41, § 81U. 





 The Planning Board's condition purports to give the Planning Board the authority to grant releases "at its discretion." Thus, the Planning Board attempts with this language to grant discretion to itself that the statute reserves to the applicant. While the Planning Board has an obligation to ensure that work was properly done, or that adequate substitute security, as authorized by the statute, is in place prior to granting a release, the Planning Board's obligations in this respect are not a matter of discretion. It is obligated to release security upon the successful completion of work, and it is obligated to permit the applicant to substitute, as from time to time varied by the applicant, one form of statutorily authorized security for another. 





 The limitation to "up to three (3) partial releases," the refusal to grant releases or permit substitution of security until fifty percent of the work has been completed, and the requirement that no release shall reduce the security by more than fifty percent of the amount then being held, all impermissibly restrict the discretion explicitly given by Section 81U to the applicant to vary the form of security "from time to time." 





CONCLUSION 





 For the reasons stated above, plaintiff's motion for summary judgment is ALLOWED IN PART, and is DENIED with respect only to the condition requiring the reservation of Lots A1, 6 and a five-foot wide path on Lot 13. The defendants' cross-motion for summary judgment is ALLOWED IN PART with respect only to the condition requiring the reservation of Lots A1, 6 and a five-foot wide path on Lot 13 and is otherwise DENIED in all respects. 





 Judgment will enter in accordance with this decision. 





FOOTNOTES
[Note 1] Unless otherwise stated, the facts are taken from the Agreed Statement of Facts submitted jointly by the parties. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.