E. ERNST MEYER *vs.* PLANNING BOARD OF WESTPORT
& another;[1] FRANCIS LONG, intervener.

No. 89-P-234.

Bristol. April 5, 1990. - August 27, 1990.

Present: BROWN, DREBEN, & KASS, JJ.

*Subdivision Control*, Plan, Decision of planning board, Regulation, Board
of health. *Planning Board. Practice, Civil*, Subdivision control appeal,
Continuance. *Waiver*.

In approving a subdivision plan, a planning board is not required to specify
those of its rules and regulations it has waived in circumstances where
the record discloses evidence of a conscious waiver such that a review-
ing court may consider whether the board, in its discretion, has acted in
the public interest. [169-172]
The record of a planning board's approval of a subdivision plan demon-
strated its conscious deviations from certain of its rules and regulations
and the waivers were consistent with the public interest in the circum-
stances. [172-174]
In an action challenging a planning board's approval of a subdivision plan,
the judge did not err in refusing to hear evidence concerning certain
board of health requirements; nor was the judge required to consider on
review speculative and marginally relevant evidence concerning arti-
facts which might be contained in the ground of the locus; furthermore,
there was no abuse of discretion in the judge's refusing the plaintiff's
request for a continuance of the trial. [174-175]

CIVIL ACTION commenced in the Land Court Department
on October 8, 1987.

The case was heard by *Marilyn M. Sullivan*, J.

*Charles R. Dougherty* (*John A. Taylor* with him) for the
plaintiff.

*Betty I. Ussach* for the defendants.

*John E. Bradley* for the intervener.

---

[1]The board of health of Westport.

KASS, J. Of six categories of arguments which the plaintiff has advanced, the most challenging is that the planning board of Westport (the "board") failed to specify those of its rules and regulations which it decided to waive in approving the subdivision plan in question. See *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 438-439 & n.8 (1979). A judge of the Land Court ruled that the board had acted within its authority. We affirm.

The parcel of land (the "locus") planned for subdivision measures 27.76 acres in Westport between the East Branch of the Westport River and Horseneck Road. It is an elongated looking property, somewhat more than three times longer than its maximum width of 624 feet. As first laid out, the proposed subdivision was to contain thirteen lots, all of them over the 60,000 square feet minimum lot size required in the zoning district. There was so much wetland in two sets of abutting lots that the board, in its approval of the plan, required that the lots in these sets be combined, thus reducing the lots in the subdivision to eleven. That was one of eight conditions which the board placed upon its approval of the definitive subdivision plan. North and south of the locus there are farms which the plaintiff describes as active. She is the proprietor of the farm to the south. The plaintiff's action for review of the board's action was brought under G. L. c. 41, § 81BB, and c. 185, § 1(*k*).

The board's rules and regulations for subdivision in Westport, adopted conformably with G. L. c. 41, § 81Q, are contained in twenty-three typewritten pages, exclusive of a five-page appendix. Some of those regulations prescribe details for the plans to be submitted, e.g., that they be drawn in black India ink on tracing cloth (§ III-B.3); that the scale of plans be one inch to each forty feet unless the board approves another scale as more convenient (§ III-B.3); that the plan show the subdivision name, boundaries, north point, date, scale, legend, a sketch identifying the location of the plan in Westport, and the title "Definitive Plan" (§ III-B.3.a). Other regulations deal with on the ground specifications for the width and grade of streets (§ IV-A), how wide easements

across lots for water mains and sanitary and storm drains shall be (§ IV-B.1), and the finished transverse grade of roadways, areas between exterior street lines and curb lines, and slopes outside exterior street lines (§ V-B.5). These examples illustrate the relatively mechanical details which are the subject of many of the rules and regulations.

1. *Inadequate identification by the board of deviations from its rules and regulations.* The plaintiff specifies eight deviations[2] from the board's regulations and complains that the board failed to identify any of those departures in writing during its proceedings or in its decision. Under G. L. c. 41, § 81R, as inserted by St. 1953, c. 674, § 7, a planning board "may in any particular case, where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations . . . ." That power to forgo application of all rules and regulations "in the public interest" is invested with a "large measure of judgment or discretion." *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 809 (1981). See also *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 213-214 (1967); *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 443 (1981); *Windsor* v. *Planning Bd. of Wayland*, 26 Mass. 650, 657 (1988). When they waive the application of rules and regulations, planning boards are not required to explain their action with findings — however desirable that might be. *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. at 439 n.8. Sparing the board that procedural discipline rests on the absence of any provision in § 81R calling upon a planning board so to do, *ibid.*, whereas other sections of the subdivision law expressly require statements of reasons for board action. See, e.g., § 81U, which requires a planning board to state in detail the reasons for disapproval of a subdivision plan.

Section 81R is similarly silent as to any requirement that a planning board must, in its approval of a subdivision plan,

---

[2]Although the plaintiff cited eight deviations, she argued only seven in her brief, and we consider the one not argued to have been abandoned.

list those rules and regulations which the board has decided to waive. Nor do §§ 81U and 81V, dealing with the machinery for approval of subdivision plans, impose on planning boards any duty of recitation of such rules or regulations as may have been waived. In the *Wheatley* case, upon which the plaintiff relies, we commented adversely on what we described as "the board's haphazard procedure," notably a failure to much consider, let alone specify, those of its regulations which it was waiving. 7 Mass. App. Ct. at 438-439 & n. 8. We did not, however, decide that the lapse from procedural precision in that case required that we annul the planning board's action. With the question now squarely presented, we decide that, in approving a subdivision plan, a planning board is not required to specify and list in writing those rules and regulations which it has waived — although it assuredly is a desirable practice to do so — so long as the record discloses evidence of conscious waiver.[3]

It is useful in this connection to bear in mind the distinction between zoning, which limits the use of land, and subdivision control, which does not dictate in the same direct fashion how land will be used but, rather, compels the construction of ways which, among other things, are safe and convenient for travel and make provision for utilities. Subdivision control also has as a major purpose ensuring that the subdivision provides adequate drainage, sewerage, and water facilities, without harmful effect to adjoining land and to the lots in the subdivision. See G. L. c. 41, § 81M; *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. at 445-446. Subdivision control has as its focus what the landowner shall do rather than not do. The subdivision control process contemplates a "dialogue between board and developer" and "exhortative give-and-take," i.e., a working out of difficulties and solutions less rigid than the zoning process. *Ibid.* Hard

---

[3]There is also a category of purely mechanical regulations, e.g., failure to provide an over-all key plan for all sheets of the plan, which is sufficiently unrelated to underlying land use consideration that deviations from such regulations may be regarded as trivial. We do not intimate that a planning board is not entitled to insist on strict conformance even to the minutiae of its regulations.

and fast rules need not apply to the process. *Id.* at 443. In part, the ingredient of relative flexibility in a planning board's administration of subdivision control reflects a legislative and judicial understanding that in many towns the planning board has little or no staff and the community must rely on the energies and work product of the board's citizen members. Requiring a written compilation of all rules and regulations with which a developer need not comply carries the potential for taxing unduly the capacity of the members of the board, particularly as at any meeting of a planning board the concerns of several property owners may be up for discussion and decision. The examples given earlier in this opinion illustrate that subdivision rules and regulations often pertain to minute engineering of detail.

Even as we acknowledge some .of the practical difficulty involved with a lay board's tabulating deviations from subdivision control regulations, we reiterate the thought expressed in the *Wheatley* opinion that precise statements as to what regulations the board purports to waive assists review and raises the level of confidence of the public that the local process is on the up and up. In the absence of an express waiver of regulations, a planning board must demonstrate, through conduct reflected in the record, that it purposefully consents to deviations from the regulations. This assists a reviewing court in considering, in the context of the discretion reposed in the board, whether the board has acted in the public interest. See *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. at 213-14; *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. at 808; *Windsor* v. *Planning Bd. of Wayland*, 26 Mass. App. Ct. at 657. See also *Curtin* v. *Board of Survey & Planning of Waltham*, 15 Mass. App. Ct. 978 (1983), in which the local board's record left it unclear whether a certain requirement of the regulations, expressly raised by an owner of immediately adjacent land, had been waived, or, as seemed to be the case, the board had dismissed consideration of the regulation for a legally untenable reason. The *Curtin* case illustrates how a planning board's failure to acknowledge, at least implicitly, that it has waived a regulation raises ques-

tions whether the board has acted on sound ground and in the public interest.

Such is not the case with the subdivision approval before us. We proceed to consider the deviations from the board's rules and regulations which the plaintiff has called to attention and which she contends require the conclusion that the approval of the subdivision plan for the locus was unlawful. Our inquiry concentrates on whether conscious waiver may be implied and whether the waiver is consistent with the public interest. Section references are to the then applicable rules and regulations of the board.[4]

Section IV-A, 4. a. provides that dead end streets not exceed 500 feet "unless . . . a greater length is necessary because of topography or other local conditions." The approved subdivision plan showed a single dead end street 1,600 feet long. The minutes of the principal hearing on the proposed plan disclose that the board squarely considered this deviation and the difficulties of a loop road system in a lot with such a narrow configuration as that of the locus. In order to discourage excessive automobile speed on the comparatively long and straight way, the board made it a condition of approval that an "island/bump combination be provided in [the] road just before reaching wetlands." This was at near the half-way mark in the road. Conscious deviation from the standard requirement is apparent. The board's resolution of the issue, given the shape and topography of the locus, was comfortably in the realm of rational choice and, hence, not contrary to the public interest. See *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. at 809.

The failure of the board to require test pit reports, as required by § III-B.3.q., is, in the circumstances, a deferral of those requirements to a later date. Given the absence of a municipal sewer system to tie into, none of the lots shown on

---

[4]At the time of the hearings before the board, sets of the rules and regulations were not available for sale to the public; the supply had run out and the town clerk was awaiting reprints. A copy of the rules and regulations was available for inspection and, presumably, for photocopying at the clerk's office and, in all events, at the Southern District Bristol County Registry of Deeds.

the subdivision plan can be used for a building until the town board of health has approved an on-site waste disposal system for the particular lot on which that building is located. *Fairbairn* v. *Planning Bd. of Barnstable*, 5 Mass. App. Ct. 171, 176, 184 (1977). Precisely what will be required on any individual lot cannot be ascertained until the board of health knows how many bedrooms an owner of a lot proposes to build. *Ibid.* See also *Loring Hills Developers Trust* v. *Planning Bd. of Salem*, 374 Mass. 343, 348 (1978). The board reasonably left waste disposal considerations to the board of health, and the deferral of data bearing on waste disposal to a later time, to the extent it may be viewed as a waiver of the planning board regulations, was a conscious waiver.

Section III-B.3.k. provides, "All buildings and physical features of abutting property that are within 50' of the boundary must be shown." The plan does show the edges of wetland and the trailing off of a brook onto adjoining property on the south. There is no suggestion that the location of any buildings is of any consequence to consideration of the plan for the locus, or that, indeed, there are buildings within fifty feet of the locus. Certainly more detail could have been shown on the plan about adjoining areas, but the board would have been familiar with the site — this is a small town — and it was for the board to decide if it was satisfied with the detail in this regard on the plan which had been filed.

Section IV-A.1.d. asks for the projection of subdivision streets to exterior boundaries of the subdivision to connect with adjoining property if, in the opinion of the board, it is suitable for ultimate development. The record does not reflect that the board formed an opinion about development of the adjoining property. As to the property south of the locus, the plaintiff disavowed development plans. In view of the long and narrow configuration of the locus and the adjoining lots and the location of the wetlands, connecting road systems were not likely. The board reasonably did not give attention to a provision that seemed irrelevant to the problem at hand.

The asserted incongruity of Lot 8 in the subdivision with

§ IV-C, which requires conformance with the area and frontage requirements of the town's zoning by-law, is not supported by the record. The lot is shown on the approved plan as having 219 feet of frontage, a depth of at least 400 feet, and an area of 69,622 square feet, well in excess of zoning requirements.

Wetlands were designated on the plan as required by § IV-E. The board dealt with the regulations in § IV-E when it adopted certain requirements imposed by the town conservation commission before approving the plan. That action implies a conscious decision by the board to piggy-back on the conservation commission's specific requirements, rather than on the perhaps more general requirements of the board's regulation.

We do not understand as having been waived the provision in § V-E.1 requiring placement of utilities below ground.

2. *Other issues.* There are three other issues which the plaintiff has argued and which we can consider in relatively summary fashion.

No reversible error attended the judge's refusal to hear evidence concerning board of health requirements. The board of health had made no report to the planning board, and its nonaction stood as constructive approval of the plan, G. L. c. 41, § 81U, but none of this would be of consequence because, as we have previously explained, the decisive action of the board of health would occur when building permits for individual lots were sought.

Section IV-D of the regulations requires subdivision plans to show "due regard[] for all natural features, such as large trees, scenic points, historic spots, and similar community assets." Prescinding from the question whether consideration of historicity is within the scope of a planning board's powers, the suggestion that there might be archeological artifacts on the locus was never advanced to the board during the subdivision plan approval process. Although the Land Court judge's review was de novo, she was not required to consider on review speculative and marginally relevant evidence concerning artifacts which might be contained in the ground of

the locus. There was no evidence of current historical investigation on the locus or designation of it as a historic site. Cf. *Sanford* v. *Vinal*, 28 Mass. App. Ct. 476 (1990).

Concerning the question whether the plaintiff was entitled to a continuance of the trial, that sort of decision rests in the sound discretion of the judge. *Commonwealth* v. *Colonial Motor Sales, Inc.*, 11 Mass. App. Ct. 800, 810 (1981). There are no overtones of arbitrariness or abuse of that discretion.

*Judgment affirmed.*