HAROLD NAHIGIAN[1] *vs.* TOWN OF LEXINGTON
(and a companion case[2]).

No. 90-P-1377.

Suffolk. March 10, 1992. - May 13, 1992.

Present: ARMSTRONG, FINE, & JACOBS, JJ.

*Subdivision Control*, Regulations, Access ways, Decision of planning board. *Municipal Corporations*, Planning board. *Zoning*, Validity of by-law or ordinance.

A regulation adopted by a town planning board relating to the maximum length of dead-end streets in proposed subdivisions was set forth in clear and unambiguous terms that were sufficiently definite to apprise a developer of a commercial subdivision, in advance, of the applicable standards and requirements. [521-523]

In an action under G. L. c. 41, § 81BB, seeking review of a town planning board's denial of approval of a subdivision plan, where the judge did not reach the questions whether the plan complied with a planning board regulation and, if not, whether the board acted reasonably in denying a waiver of the regulation, the matter was remanded for the judge's determination. [523-524]

In an action challenging the validity of a residential zoning classification, where it was unclear from the judge's findings whether the burden of proof had been imposed on the proper party (the plaintiff) with respect to reasonable access to the lot in question, the matter was remanded for the taking of further evidence and a determination whether the plaintiff had carried his burden. [524-526]

CIVIL ACTIONS commenced in the Land Court Department on July 6, 1988, and May 26, 1989, respectively.

The cases were consolidated for trial and were heard by *Marilyn M. Sullivan*, J.

*Acheson H. Callaghan, Jr.* (*Martha M. Walz* with him) for the defendants.

[1] As trustee of Tracer Lane II Realty Trust.

[2] The companion case is by Harold Nahigian against the planning board of Lexington.

*Brian M. Hurley* for the plaintiff.

FINE, J. Harold Nahigian, trustee of the Tracer Lane II Realty Trust (Nahigian), brought two actions in the Land Court relating to a parcel of undeveloped land he owns, all but a small portion of which is in the town of Lexington. In one action against Lexington's planning board, he sought review, pursuant to G. L. c. 41, § 81BB, of the board's decision denying approval of a subdivision plan. In the other against the town of Lexington, he sought a declaratory judgment that the zoning of a portion of his land for residential use was invalid. The cases were consolidated for trial before a judge who ruled in favor of Nahigian in both cases. Lexington and the board appealed.

1. *The subdivision case.* The relevant facts are undisputed. Nahigian owns a thirty-acre parcel of land. As depicted on the accompanying diagram, an 11.1-acre portion of the locus, some of it wetlands and a small piece of it (.18 acre) in Waltham, abuts Route 128. To the southeast of the locus in Waltham is a commercial development, also abutting Route 128. Access to the commercial development is via Tracer Lane which commences at Trapelo Road in Waltham. The only access to the locus would be by an extension of Tracer Lane.

Nahigian applied to the board for approval of a definitive subdivision plan showing Tracer Lane as a dead-end street extending into the locus to provide access to a proposed office building planned for the site. The board denied approval of the plan on several grounds, among which was the length of the proposed extension of Tracer Lane. Among the design standards in the board's "Development Regulations," which purported to include the town's rules and regulations under the subdivision control law (see G. L. c. 41, § 81Q), was one limiting dead-end streets to 650 feet from the closest intersecting through street. Tracer Lane, as proposed by Nahigian, would have extended 2,575 feet from the intersection with Trapelo Road. Nahigian's request that the board waive the design standard relating to dead-end streets with respect to his project was denied.

Nahigian appealed to the Land Court claiming, among other things, that Lexington's subdivision rules and regulations were not sufficiently definite to apprise him in advance of the applicable standards and requirements. Alternatively, he contended that his plan did not violate the stated regulations and that, if it did, the board was unreasonable in refusing to waive the regulations with respect to his plan. The judge based her decision in favor of Nahigian on her conclusion that the regulations did not meet the requirement that they "be comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them and what standards and procedures will be applied to them." *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962).

The subdivision control statute contemplates the adoption by a local planning board of rules and regulations specifically pertaining to subdivisions of land. G. L. c. 41, §§ 81M & 81Q. Compare *Pieper* v. *Planning Bd. of Southborough*, 340 Mass. 157, 163 (1959); *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 212 (1967); *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 438 (1981). Lexington's "Development Regulations" are not such regulations. Adopted in 1986, they combine, supposedly "for ease of administration," all the policies, procedures, and design standards with respect to special permits, site plan approval, various other zoning matters, and subdivision control. There is nothing to prevent a set of planning board regulations from dealing with subject matters broader than subdivision approval requirements, but such requirements should be set forth clearly. There are no sections in Lexington's regulations exclusively devoted to procedures or standards for approval of subdivisions, and the terminology used blurs the distinction between subdivision control and zoning by confusing the terms "definitive site development plan" and "definitive subdivision plan." A number of the design standards set forth in the regulations concern matters which, according to G. L. c. 41, § 81Q, are improper considerations for purposes of subdivision control. References to commercial subdivisions

appear in two section headings, entitled "definitive subdivision plan for commercial, industrial or other non-residential development," included in the chapter relating to requirements for applications and procedures. In each instance, the section heading is followed only by the word "reserved." However, an introductory section states that the regulations are to apply to "planned residential and commercial development," and other sections of the regulations provide that "[n]o subdivision shall be approved unless it complies with these [r]egulations," and that "[n]o person shall make a subdivision . . . unless . . . a definitive plan has been submitted and approved" in accordance with the regulations.

The judge described the regulations and her reasoning as follows:

> "The [p]lanning [b]oard by including within one comprehensive document and without differentiation the regulations relating not only to subdivision plans but to site plans and special permits has failed to distinguish between the applicability of each set of regulations to the project under consideration. For that reason and the difficulty even for experienced students of planning board regulations such as myself, the regulations are so confusing that it is impossible to determine which are to apply to any particular plan. This difficulty is compounded by the failure of the regulations to use the statutory subdivision terms so that it is unclear in any particular instance whether the [p]lanning [b]oard is referring to site plans or to subdivision plans. It is further compounded in the present instance by the reserved sections which particularly relate to commercial subdivisions so it is possible that the [p]lanning [b]oard in drafting the rules and regulations did not intend that commercial subdivisions be subject to them. The proliferation of unanswered questions leads me to find and hold that the so called development regulations of the defendant do not meet the *Castle Estates* standard and must be held to be invalid. *Chira* v. *Planning Board of Tisbury*, 3 Mass. App. Ct. 433, 438 (1975)."

The judge ordered that the development regulations no longer be enforced but stayed execution of the order as applied to applicants other than Nahigian pending this appeal or until the board amended or revised the regulations.

To some extent we agree with the judge's criticism of the regulations. The only design standard in the regulations which the board claims on appeal as a proper basis for its disapproval of the plan, however, is the one relating to the maximum length of dead-end streets. Such a standard is one properly considered by a planning board in determining whether to approve a subdivision plan. See *Francesconi v. Planning Bd. of Wakefield*, 345 Mass. 390, 391-393 (1963); *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. 79, 85 (1976); *Wheatley v. Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 450-451 (1979). Compare *Sparks v. Planning Bd. of Westborough*, 2 Mass. App. Ct. 745, 747-749 (1974). The requirement is set forth in clear and unambiguous terms. Nahigian understood what the regulation required and assumed throughout the proceedings that it pertained to his application for approval of a commercial subdivision. Compare *Miles v. Planning Bd. of Millbury*, 29 Mass. App. Ct. 951, 953-954 n.4 (1990). Otherwise, he would not have sought a specific waiver of the dead-end street requirement. Nahigian's plan did not comply with that standard.[3]

The issue before us is whether the board could reject a plan based upon a clearly stated requirement, understood by the applicant to affect his plan, notwithstanding that the requirement was included in a generally confusing set of regulations. Unlike the trial judge, we think the board could

---

[3]Nahigian contends that the length of the dead-end street should be measured either from his lot line or from the boundary between Lexington and Waltham instead of from Trapelo Road. However, "[such dead-end street regulations] are enacted because of a concern that the blocking of a dead-end street, as by a fallen tree or an automobile accident, will prevent access to the homes beyond the blockage particularly by fire engines, ambulances, and other emergency equipment. . . ." *Wheatley v. Planning Bd. of Hingham*, 7 Mass. App. Ct. at 451. Given that concern, it would make no sense to measure the length of a dead-end way other than from the nearest intersecting through street.

properly reject the plan on the basis of the clearly stated dead-end street requirement included in the regulations.

There are numerous cases in which it was held that a planning board could not reject a subdivision plan, or impose conditions on its approval of a plan, based upon considerations either not addressed in its regulations or addressed in terms so vague that they did not meet the requirements of the *Castle Estates* case. See *Pieper* v. *Planning Bd. of Southborough,* 340 Mass. at 163; *Chira* v. *Planning Bd. of Tisbury,* 3 Mass. App. Ct. at 438; *Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct. 306, 309 (1976); *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171, 177, 178-179 (1977). Contrast *North Landers Corp.* v. *Planning Bd. of Falmouth,* 382 Mass. at 442-444 (1981); *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. at 83. As explained in *North Landers Corp.* v. *Planning Bd. of Falmouth,* 382 Mass. at 444, "the *Castle Estates* standard is offended when local boards have introduced reasons not specified in the published regulations." The principle follows from both G. L. c. 41, § 81M, under which a planning board has no discretion to disapprove a subdivision plan which meets the recommendations of the board of health and complies with the planning board's reasonable rules and regulations, see *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. at 84-85, and from the accepted notion that a landowner should have notice in advance of what may be required for approval, see *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield,* 344 Mass. at 334. We have found no case suggesting that, because some of its regulations are not clear, a planning board must approve a plan which is not in compliance with another of its regulations which *is* clear and which relates to a matter, such as the suitability of a way, properly within the planning board's concern. Compare *Mac-Rich Realty Constr. Co.* v. *Planning Bd. of Southborough,* 4 Mass. App. Ct. at 82 (regulations enforced to the extent that they are clear). To require approval of a plan in such circumstances would tend to frustrate one of the main goals of the subdivision con-

trol law, the assurance that new ways proposed for construction are adequate.

None of the defects in Lexington's regulations actually caused Nahigian to be confused or misled about the standards he was required to meet. Nor do we think a reasonable owner, in the circumstances, would have been confused. The most troublesome aspect of the regulations as applied to this case is the possible uncertainty whether they apply to commercial subdivisions. As a matter of construction of the regulations, we conclude that the design standard concerning dead-end streets does apply to commercial subdivisions. The intention that the regulations apply to *all* subdivisions is clearly stated, and the concern about the adequacy of ways applies to all types of subdivisions. If there is any confusion created by the two "reserved" sections, it relates to the procedures for commercial subdivision applications, not the standards. The inappropriate terminology used throughout the regulations is also troublesome, but a reasonable owner, we think, would understand the terms used in the relevant sections. Finally, the inclusion among the design standards of some standards not properly considered with respect to an application for approval of a subdivision plan could cause confusion to an applicant. The one design standard in issue in this case, however, was clearly applicable.

Because the judge decided that the regulations were too confusing to be enforced, she did not reach the question whether the plan complied with the regulation and, if not, whether the board abused its discretion in denying Nahigian a waiver. The plan clearly violated the regulation. The case must be remanded to the trial judge to afford her the opportunity to make the determination whether denial of a waiver was an abuse of discretion. See *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. at 85-86.[4] The order enjoining enforcement of the development

---

[4] The general safety concerns expressed in note 3, *supra*, might be reduced in this case since the building would be occupied by commercial and not residential tenants, thus, only during business hours, it would have a sprinkler system, and it could be reached by helicopter in an emergency. It

regulations, however, ought to be vacated in its entirety, since at least some of the regulations are within the board's authority and are sufficiently clear as written or as applied to this case. Nothing in this decision is intended to prevent further challenges to those portions of the regulations that may not be authorized or clearly written.[5]

2. *The validity of the zoning.* Nahigian's entire thirty-acre lot was zoned for residential use when Lexington first adopted zoning in 1924. In 1970, after construction of Route 128, the portion of the lot abutting Route 128 was rezoned to permit commercial office use. At the time of the rezoning, the planning board recommended to the town meeting that they reconsider rezoning the remainder of the lot, consisting of 18.9 acres, at a later time should it not be purchased for conservation or recreation purposes. The purchase did not materialize, but the town meeting never reconsidered the zoning. The portion still zoned for residential use is surrounded by a residential area in Waltham, an undeveloped recreational area known as the Hobbs Brook reservation, and the wetland area within the commercially zoned portion of Nahigian's lot abutting Route 128. The only possible vehicle access to the area would be from Trapelo Road through the residential Waltham neighborhood or by extending Tracer Lane. In the declaratory judgment action, Nahigian claimed that the classification of a portion of his lot for residential use was arbitrary and unreasonable. The judge agreed.

Zoning of land has traditionally been treated as a matter for local regulation. See *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 228 (1964). When construing a zoning by-law, the court will make every presumption in favor of the municipality, and the by-law will usually be enforced unless one can prove that it conflicts with the constitution or the enabling statute. See *Inspector of Bldgs. of Lowell* v. *Stoklosa*, 250 Mass. 52, 62 (1924); *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 594 (1949); *Crall* v.

___

is unclear from the findings whether it could be reached from Route 128 in an emergency.

[5]The town would be well advised to review and rewrite the regulations.

*Leominster*, 362 Mass. 95, 102 (1972). *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 309 (1990). Specifically, one must show that there is no rational relationship between the by-law and the furtherance of public safety, public health, public welfare, or some other permissible public goal. See *Caires* v. *Building Commr. of Hingham*, 323 Mass. at 593; *Crall* v. *Leominster*, 362 Mass. at 101; *Sturges* v. *Chilmark*, 380 Mass. 246, 256 (1980). As an alternative, one may show that the by-law is arbitrary, unreasonable, and oppressive as applied to the land in question. See *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 444 (1949); *Jenckes* v. *Building Commr. of Brookline*, 341 Mass. 162, 165 (1960). Factors to be considered in determining the reasonableness of the by-law include "the location, size and characteristics of the land, the nature and use of adjoining land and other land in the general vicinity, and all other physical aspects that are involved." *Barney & Carey Co.* v. *Milton*, 324 Mass. at 449. *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. at 310. If the reasonableness of the by-law is only questionable, the by-law will be sustained. See *Caires* v. *Building Commr. of Hingham*, 323 Mass. at 594-595; *Crall* v. *Leominster*, 362 Mass. at 104.

Of the factors properly considered for these purposes, the possible lack of access to the area in issue was the primary one tending to establish the unreasonableness of the residential zoning.[6] The judge described it as "unclear" and "speculative" whether any of the streets in the adjoining Waltham residential area are public ways. Pointing to the impediments to access other than through Waltham, the judge concluded that the zoning by-law effectively deprived Nahigian of the use of his property and was, therefore, arbitrary and unreasonable. Accordingly, the judge ordered the area "unzoned for the attention of the town meeting." Less than a month after judgment was entered, the town moved to supplement

---

[6]Apparently, the only practical effect of the residential zoning at the present time is its restrictive effect on the maximum floor area applicable to the proposed office building under the zoning by-law. See § 7.9.1(a) of the zoning by-law.

the record with documentary evidence showing that some of the ways in the adjoining Waltham residential neighborhood were, in fact, public ways. The judge denied the motion.

The town of Lexington argues on appeal that the judge improperly imposed the burden of proof on the town instead of on Nahigian and that she improperly denied the town the opportunity to present additional evidence to prove that Nahigian could gain access through the public ways in Waltham. It is unclear from the judge's decision whether she placed the burden on the town, but the language she used does suggest that, as to the issue of access, she might have done so. The issue of the validity of the zoning by-law as applied to Nahigian's land may depend, in our view, on the reasonable availability of access from a public way in Waltham.[7] Nahigian bore the burden of proving such reasonable access unavailable. As the companion case is being remanded, so too, in our view, is a remand appropriate to afford the trial judge the opportunity to consider whether Nahigian sustained his burden of proving the unavailability of reasonable access through Waltham to the portion of his lot zoned for residential use. Although the judge had discretion to deny Lexington's posttrial motion to present additional evidence, and the denial was not an abuse of that discretion, we, nevertheless, in view of our remand order, vacate the order denying the motion. Given the documentary nature of the evidence offered, its significance to the crucial issue of potential access, and the presumption in favor of the validity of legislatively-adopted zoning, we think the evidence offered belatedly should be considered on remand.

3. *Conclusion.* Accordingly, the judgment is vacated and the cases are remanded for further proceedings consistent with this opinion, including a determination: (1) whether the planning board's denial of a waiver of the dead-end street

---

[7]Nahigian argues that the restriction on development over the part of the land subject to a Boston Edison easement makes the entire residential tract unbuildable, since the easement runs through the middle of the tract. Although the easement may prevent maximum development of the land, some development may still be possible, and Nahigian was fully aware of the easement when he purchased the land.

requirement was reasonable or an abuse of discretion; and (2) whether, for purposes of calling into question the validity of the zoning classification, the lack of reasonable access to the residentially-zoned portion of the land was sufficiently proved by Nahigian, taking into account the posttrial evidence submitted by the town. The orders restricting enforcement of the town's development regulations and denying admission of the town's posttrial evidence are vacated.[8]

*So ordered.*

---

[8]The interpretation and validity of § 7.9.1(a) of the zoning by-law as it would affect the maximum floor area for the proposed building, see note 6, *supra*, may also be considered on remand.