SHIRLEY J. FEDERLINE, trustee, vs. PLANNING BOARD OF
BEVERLY & another.[1]

No. 91-P-18.

Suffolk. April 15, 1992. - July 24, 1992.

Present: BROWN, SMITH, & IRELAND, JJ.

*Subdivision Control*, Regulations, Access ways, Decision of planning
board. *Words*, "Sideline intersecting street."

A municipal planning board properly exercised its powers in interpreting
the phrase "sideline intersecting street" in its regulation to mean that
the measurement of the length of any proposed dead-end street in a
subdivision must commence at the nearest through street which inter-
sects with the dead-end street and, as a result, denying approval of a
developer's subdivision plan containing proposed streets which, by the
board's calculation, each exceeded the maximum length proscribed by
the dead-end street regulation. [68-70]

CIVIL ACTION commenced in the Land Court Department
on September 22, 1988.

The case was heard by *Marilyn M. Sullivan*, J.

*Mary P. Harrington* for the defendants.

*Paul D. Gallese* (*Murray G. Shocket* with him) for the
plaintiff.

SMITH, J. The planning board of the city of Beverly
(board) appeals from a judgment of the Land Court ordering
the board to approve the plaintiff's subdivision plan. The
Land Court had concluded that the decision of the board de-
nying approval of the plaintiff's definitive subdivision plan
was outside its authority and legally untenable.

The facts are not in dispute. The board's rules and regula-
tions governing the subdivision of land included the following

_____

[1] The city of Beverly.

design standard (§ IV[A][5][a]) relative to the length of dead-end streets located within a subdivision.

> "For the purposes of this section, any proposed street which intersects solely with a dead-end street shall be deemed to be an extension of the dead-end street. Dead-end streets and their extensions, if any, shall not be longer than 500 feet (500') (measured between the side-line intersecting street and the center of the turn-around) unless in the opinion of the Board, a greater length is necessitated by topography or other local conditions."

The method used by the board in measuring the lengths of the proposed dead-end streets is the main issue in this matter.

Connor Road is a public way located adjacent to the proposed subdivision. The plaintiff proposed to locate three lots on an extension of Connor Road (Connor Road Extension) and six lots on a proposed new street (Meadow Glen Road) which would branch off Connor Road. Both proposed new streets would have terminated in a cul-de-sac. Connor Road, the source of the proposed new streets, also ended in a cul-de-sac.[2]

Connor Road's present length exceeds 500 feet, as measured from its intersection with Standley Street, the nearest public street to it that does not end in a dead end. The proposed extension of Connor Road would add 185 feet to its length. The other proposed street, Meadow Glen Road, would extend from Connor Road for approximately 485 feet.[3] Therefore, the lengths of both proposed dead-end streets, if measured from their connections with Connor

---

[2] "Cul-de-sac", a French expression, means "bottom of a sack." It is defined in Black's Law Dictionary 378 (6th ed. 1990) as "[a] blind alley; a street which is open at one end only. A street closed at one end." Therefore, a street that ends in a cul-de-sac is a dead-end street.

[3] It would have been helpful if the appellant had included in its brief or appendix an outline plan based on the exhibits in evidence. The proposed layout of the streets, however, is not too difficult to visualize and the absence of the plan plays no part in our decision.

Road, are within the distances permitted by § IV(A)(5)(a), the dead-end street regulation.

The board, however, interpreted the phrase "sideline intersecting street" in the regulation to mean that the measurement of the length of any proposed dead-end street in a subdivision must commence at the nearest through street which intersects with the dead-end street. Because Connor Road, itself, is a dead-end street, the board started its measurements of the length of the proposed dead-end streets from the intersection of Standley Street (the nearest thoroughfare) and Connor Road. By commencing its measurements from that point, the board included the entire present length (500 feet) of Connor Road. As a result, the board calculated that the length of the proposed Connor Road Extension would exceed 685 feet, and the length of the proposed Meadow Glen Road was more than 1,000 feet. Because the length of both proposed streets violated the dead-end street regulation, the board denied approval of the plaintiff's subdivision plan.[4]

The plaintiff filed a complaint in the Land Court claiming, among other things, that the board committed error in the manner by which it measured the lengths of the proposed dead-end streets. A Land Court judge concluded, after trial, that the board's reasoning in not granting approval of the plaintiff's plan was "inherently flawed" because the board, when measuring the lengths of the proposed streets pursuant to its dead-end street regulation, erroneously included Connor Road, a public way located outside the subdivision. The judge stated that, "[e]ven if the [dead-end street] regulation applied to a public way, the term 'sideline intersecting street' in the regulation is difficult to define. It is not, however, broad enough to encompass the application for which the

---

[4]The board also gave two other reasons for disapproving the subdivision plan. They are (1) the plan did not meet the minimum water flow requirements of the city, and (2) the corner radii within the proposed subdivision did not meet the minimum requirements.

The judge found that the board was also in error on these reasons. The appeal, however, only brings to this court the question whether the judge committed error concerning the board's measurements of the length of the dead-end streets.

[board] argues here. To do so would set the 'sideline' at the nearest line of two intersecting public ways which could be, as here, wholly unrelated to the proposed subdivision." Accordingly, the judge ruled that, because the proposed dead-end streets shown on the subdivision plan, did not exceed 500 feet in length, the board's decision exceeded its authority. On appeal, the board argues that, under certain circumstances, a board may consider in its deliberations an adjacent public way's effect on a subdivision.

"The Subdivision Control Law is a comprehensive statutory scheme designed for the safety, convenience and welfare of the inhabitants of the cities and towns." *Costanza & Bertolino, Inc.* v. *Planning Bd. of N. Reading*, 360 Mass. 677, 679 (1971). It achieves that purpose by "regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways . . . ." G. L. c. 41, § 81M, as inserted by St. 1953, c. 674. Pursuant to their duties under the Subdivision Control Law, planning boards are urged to exercise their powers with "due regard for the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; . . . for securing safety in the case of fire, flood, panic and other emergencies . . . ." *Ibid.* See *Meyer* v. *Planning Bd. of Westport*, 29 Mass. App. Ct. 167, 170 (1990)("subdivision control . . . compels the construction of ways which, among other things, are safe and convenient for travel and make provision for utilities"). Given the concern enunciated in the statute for the safety of the residents of a proposed subdivision, a planning board may properly regulate the length of dead-end streets within a subdivision. *Francesconi* v. *Planning Bd. of Wakefield*, 345 Mass. 390, 393 (1963). *Mac-Rich Realty Constr., Inc.* v. *Planning Bd. of Southborough*, 4 Mass. App. Ct. 79, 85 (1976). *Nahigian* v. *Lexington*, 32 Mass. App. Ct. 517, 521 (1992).[5]

---

[5]"[Dead-end street regulations] are enacted because of a concern that the blocking of a dead-end street, as by a fallen tree or an automobile accident, will prevent access to the homes beyond the blockage particularly

In carrying out its functions, a planning board may consider the effect that an adjacent public way may have on the proposed subdivision. *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 437 (1981)("[f]actors pertaining to safety, accessibility, or the increased traffic on [an adjacent public road] . . . may be considered where relevant to the requirements of the statute or of local regulations"). See also *Nahigian* v. *Lexington*, 32 Mass. App. Ct. at 521 n.3. Here, Connor Road, the adjacent public way, is itself a dead-end street and would have served as the source of the proposed streets, also dead-end streets. Therefore, the length of Connor Road had a marked effect on the proposed subdivision, at least in regard to the safety of the residents. Accordingly, when measuring the length of the proposed dead-end streets, the board could properly take into consideration the length of Connor Road. *Nahigian* v. *Lexington, supra* at 521-522. The fact that a proposed dead-end street in a subdivision is merely an extension of a public street does not diminish in any way the concern for safety posed by a lengthy dead-end street.[6]

We recognize that subdivision regulations must be "comprehensive, reasonably definite, and carefully drafted, so that owners may know in advance what is or may be required of them." *Castle Estates* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962). We think that the meaning of the phrase "sideline intersecting street" in the dead-end street regulation is clear; "sideline intersecting street" means the nearest intersecting *through* street. *Nahigian* v. *Lexington*, 32 Mass. App. Ct. at 521 n.3.

---

by fire engines, ambulances, and other emergency equipment . . . ."
*Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 451 (1979).

[6]We are aware that it has not been determined whether "a subdivision plan could be disproved on the sole ground of the inadequacy of an adjoining public way." *Miles* v. *Planning Bd. of Millbury*, 29 Mass. App. Ct. 951, 953 (1990). Our decision does not address that question. Here, the board ruled that the proposed streets in the subdivision were inadequate, not that the adjoining public way was inadequate.

The judgment is reversed, and a new judgment is to issue declaring that the board's decision was not in excess of its authority.

*So ordered.*