Robert Collings & others[1] vs. Planning Board of Stow.[2]

No. 10-P-533.

Suffolk. December 9, 2010. - May 10, 2011.

Present: Kafker, Smith, & Hanlon, JJ.

*Subdivision Control,* Approval of plan, Decision of planning board, Conditions. *Zoning,* Zone boundary.

A town planning board (board) acted in excess of its authority in approving a definitive subdivision plan with a discretionary waiver of, inter alia, the maximum cul-de-sac street length under the town's subdivision rules and regulations, on the condition that the proponents of the plan dedicate to public use and transfer to the town or another entity certain open space, without compensation, where G. L. c. 41, § 81Q, prohibited the condition [451-455]; however, the condition imposed by the board requiring sprinklers in the residential buildings was not unreasonable or an abuse of discretion, and did not exceed the board's authority, where it was related to an issue within the scope of concern of the subdivision control law and correlated to the purpose of the street-length rule [455].

There was no merit to the claim of plaintiffs in a civil action, challenging the decision of a town planning board (board) approving their definitive subdivision plan with waivers and conditions, that the board acted arbitrarily or abused its discretion by treating substantially similar plans differently. [456]

In a civil action brought in the Land Court by plaintiffs against a town planning board, seeking, inter alia, judgment declaring the location of certain zoning district boundaries on their property, the judge correctly declined to consider other plans that were inconsistent with the town's bylaw, where the plaintiffs failed to meet their burden to show that a different boundary was intended. [456-458]

Civil action commenced in the Land Court Department on June 11, 2007.

The case was heard by *Gordon H. Piper,* J., on a motion for summary judgment, and entry of judgment was ordered by him.

*Michelle J. Blair* for the plaintiffs.

*Jonathan D. Witten* for the defendant.

[1]Caroline Collings and Linda S. Cornell.

[2]Leonard H. Golder, Kathleen Willis, and Ernest E. Dodd as they are the members of the planning board of the town of Stow.

KAFKER, J. The issue presented to us is whether, as a condition of granting subdivision approval, the town of Stow (town) planning board (board) may require dedication of open space for public use and actual conveyance of that open space to the town in exchange for certain waivers without violating G. L. c. 41, § 81Q. The plaintiffs, Robert and Caroline Collings and Linda S. Cornell, appealed to the Land Court contesting the condition, and on the plaintiffs' motion for summary judgment, the judge affirmed the decision of the board, following which the plaintiffs appealed to this court. In addition, we address the plaintiffs' contention that the judge below failed to issue a declaratory judgment locating the relevant zoning district boundaries on their property.

*Background.* The plaintiffs own more than fifty-five acres of land in the town, a portion of which abuts the Assabet River (locus). The locus is located principally within the residential zoning district but portions lie within the recreation/conservation district, the flood plain/wetlands overlay district, and the water resource protection overlay district.[3] Thirty-nine of the fifty-five acres are suitable for development.[4] The plaintiffs submitted a definitive subdivision plan seeking approval for five residential lots, although the board noted in its decision that the locus has the potential for in excess of ten lots.

The proposed access to the five lots is from Barton Road, a public way, over a new 1,300 foot-long street ending in a cul-de-sac.[5] Section 7.8.2.2 of the town's zoning bylaw provides that cul-de-sac streets shall not exceed 500 feet in length except that the board, by waiver, may allow cul-de-sac streets up to 1,500 feet in length but only if certain conditions are met. One of the conditions requires dwelling units constructed on lots with frontage on the cul-de-sac to be provided with a residential sprinkler system and another requires the subdivider to provide "a minimum of ten percent of the portion of the locus suitable

---

[3]No issues as to the water resource protection overlay district are before us.

[4]The plaintiffs assert that 38.91 acres are suitable for development. The town generally denies the allegation but admits that some of the acreage is unsuitable for development and submitted no evidence to raise a genuine issue of fact regarding the total asserted by the plaintiffs.

[5]A street that terminates in a cul-de-sac constitutes a dead-end street. *Federline* v. *Planning Bd. of Beverly*, 33 Mass. App. Ct. 65, 66 n.2 (1992).

for development (excluding wetlands) to be dedicated for open space, parks or future public facilities and infrastructure."[6] The plan also required other waivers which are not at issue here. The board granted approval with the necessary waivers along with numerous conditions.

The board, based on the definitive subdivision plan, determined that there were four "open space" areas totaling 5.68 acres. As a condition of approval, the board required modification of the plan to show a *minimum* of ten percent (five and one-half acres) of the land to be dedicated for open space with public access acceptable to the board. The board further required the open space to be provided in two distinct parcels, each with access to the cul-de-sac, and the board specifically required a portion of lot 5, described as "an environmentally significant area with views," to be included in the open space parcels.

The board acknowledged that the developer proposed to transfer ownership and control of the open space to a homeowner's association, the governing provisions of which would require that the open space be made available to the public for "passive, non-motorized activities such as hiking, dog walking, cross country skiing, wildlife watching and ice-skating." This proposal was unacceptable to the board, however, because the homeowner's association reserved "the right to deny access to the open space to any persons operating motorized vehicles, including ATVs, motorcycles, snowmobiles, cars, trucks, etc. and to prohibit the public, if there are multiple problems with trash, property damage, violation of restrictions, trespassing, etc." Instead, the board required the plaintiffs to offer the open space parcels first to the town's conservation commission for open space and "passive recreation with public access in perpetuity," or, should the commission decline to accept the open space, "to a land trust or similar non profit organization subject to a Conservation Restriction with the Town named as a benefitted party." Finally, should both the conservation commission and the land trust decline the offer, the board required transfer of the open space to a homeowners association, subject to a conservation restriction, with the

---

[6]Section 7.8.2.2(f) of the bylaw requires an "open space buffer" with a minimum depth of 300 feet along "that portion of any existing street upon which the proposed subdivision had frontage as of June 1, 1995." The plaintiffs sought and received a waiver from this provision.

town named as a benefitted party, and public access with appropriate restrictions.

In support of these conditions, the board explained as follows:

> "In accordance with [G. L. c. 41, §§ 81R-U] and the Rules and Regulations Governing the Subdivision of Land of the Stow Planning Board . . . the Board has the authority to require open space for passive recreation with public access in exchange for strict compliance — waivers — from the requirements of the Subdivision Rules and Regulations where such waivers are in the public interest and not inconsistent with the Subdivision Control Law.
>
> "The Board finds that this Decision, as conditioned herein, includes requests for significant waivers from the requirements of the rules and regulation[s] and therefore the request for open space for passive recreation with public access is appropriate in scale and relationship to the impacts of the proposed subdivision. . . . If said waivers were not granted, the applicant would be limited to a 500' as opposed to a 1300' cul-de-sac as per the Rules and Regulations Governing Subdivision of Land of the Stow Planning Board."

On appeal to the Land Court and before us, the plaintiffs argue that the board exceeded its authority in imposing the condition that the plaintiffs transfer open space to the conservation commission or a land trust. In support of their argument, they point to G. L. c. 41, § 81Q, which prohibits, as a condition of approval of a subdivision, dedication of subdivision land to the public use or conveyance to the town for any public purpose without just compensation. The board ignored this restriction in its decision but the Land Court judge, on the town's motion for summary judgment, addressed it directly. While conceding the mandated transfer to the town "is the kind of exaction that the statute forbids," the judge reasoned that the condition does not run afoul of § 81Q because it was in exchange "for proper and rational consideration," i.e., the discretionary "waiver of the street length rule." The judge noted that the open space requirement may have driven down the number of house lots the ap-

plicants will develop and in that way is related to the public safety concerns that underlie the maximum street length rule. The judge concluded that "the open space requirement was a reasonable response to the concerns underlying the street length rule."

*Discussion.* 1. *Public use condition.* General Laws c. 41, § 81Q, expressly provides that "[n]o rule or regulation shall require, and no planning board shall impose, as a condition for the approval of a plan of a subdivision, that any of the land within said subdivision be dedicated to the public use, or conveyed, or released to the commonwealth or the county, city or town in which the subdivision is located, for use as a public way, public park or playground, or for any other public purpose, without just compensation to the owner thereof." In the context of a subdivision that complied with the subdivision control law and all of the rules and regulations of the planning board and accordingly required no waivers, the Supreme Judicial Court reiterated that, pursuant to § 81Q, "[a] planning board may not impose, as a condition of its approval, a requirement that any land within a subdivision be conveyed for any public purpose," in the absence of just compensation or the owner's consent. *Young* v. *Planning Bd. of Chilmark,* 402 Mass. 841, 842, 844-845 (1988). In that case, a planning board had wrongly rescinded its approval of a subdivision plan when a developer had failed to make a promised gift of land, which was not a condition of planning board approval, to a charitable organization for the benefit of the town. We now must decide whether the board's discretionary authority to grant waivers of its subdivision rules and regulations may be exercised in a manner that requires a transfer of land that otherwise would be prohibited by § 81Q.

We see nothing in the waiver provision contained in G. L. c. 41, § 81R, that authorizes a planning board to depart from the proscription of § 81Q. Section 81R provides in pertinent part that "[a] planning board may . . . where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations, and with the frontage or access requirements specified in said law, and may, where the ways are not otherwise deemed adequate, approve a plan on conditions limit-

ing the lots upon which buildings may be erected and the number of buildings that may be erected on particular lots." Section 81R recognizes "that a regulation, although in general sound and reasonable, may be unreasonable when applied to particular land or in unusual circumstances." *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 213-214 (1967).

Here, the board's regulations limit the length of dead-end streets. It is well-settled that planning boards may properly regulate the length of dead-end streets due to concerns about fire safety, among other issues. *Federline* v. *Planning Bd. of Beverly*, 33 Mass. App. Ct. 65, 68 & n.5 (1992) ("[Dead-end street regulations] are enacted because of a concern that the blocking of a dead-end street, as by a fallen tree or an automobile accident, will prevent access to the homes beyond the blockage particularly by fire engines, ambulances, and other emergency equipment"). In addition, § 81R expressly allows planning boards to impose conditions limiting the number of buildable lots or the number of buildings that may be constructed on a lot where there exists a concern about the adequacy of the ways. Moreover, we have said that § 81Q does not "prohibit a planning board's reasonable regulation of adequate access to [and safety of] the subdivision." *Sullivan* v. *Planning Bd. of Acton*, 38 Mass. App. Ct. 918, 921 (1995). Thus, a condition requiring the developer to grant an easement over subdivision land to provide a turning lane for access into a subdivision did not violate § 81Q, notwithstanding the effective dedication of subdivision property to a public way, because the turning lane was necessary to provide safe access to the subdivision. *Sullivan* v. *Planning Bd. of Acton, supra.* We agree with the judge, therefore, that in general, a condition requiring the dedication of open space which in effect reasonably limits the number of buildable lots, imposed out of safety concerns arising from the length of the street, would not run afoul of § 81Q.

Here, the board did not limit itself to a reasonable open space requirement but went much farther and required dedication of open space for public use, including the actual transfer of that open space to the town or a land trust. The exactions also provide no additional benefit above and beyond the open space requirement that relate to the safety concerns that are the subject of the

subdivision law and the street length requirements. The prohibition of § 81Q applies "where a planning board requires a subdivision applicant to grant land for a public purpose unrelated to adequate access and safety of the subdivision." *Sullivan* v. *Planning Bd. of Acton*, 38 Mass. App. Ct. at 921. That is precisely what the board did here. Neither the board nor the judge have identified any concerns within the scope of the subdivision control law as set forth in G. L. c. 41, § 81M, that justify the transfer of the property to the public without compensation that are not already addressed by simply requiring that the property remain open space.

Although the waiver provision of § 81R confers considerable discretion on a planning board and a planning board is not required to grant a waiver, see *Krafchuk* v. *Planning Bd. of Ipswich*, 453 Mass. 517, 529 (2009), and cases cited, the exercise of the discretion to grant a waiver must be guided by the standards set forth in § 81R and not the desire to exact public access to and control of private property. It is axiomatic that where the grant of a waiver must not be inconsistent with the intent and purpose of the subdivision control law, conditions imposed in exchange for granting a waiver similarly may not be inconsistent with the intent and purpose of the subdivision control law. Here, the board had sufficient safety concerns related to emergency access that it required sprinklers for each of the five proposed homes. Limiting parking on the proposed dead-end way would have been consistent with those safety concerns. Instead, the board ensured that space, including some of the more remote areas of the locus, be open to the public and accessible from the proposed dead-end way at two separate locations which undoubtedly would add vehicular traffic and parked cars to the dead-end street, only adding to safety concerns.

We have recognized that compared to zoning provisions that are relatively rigid, "[t]he subdivision control process contemplates a 'dialogue between board and developer' and 'exhortative give-and-take,' i.e., a working out of difficulties and solutions less rigid than the zoning process." *Meyer*, 29 Mass. App. Ct. 167, 170-171 (1990), quoting from *North Landers Corp.* v. *Planning Bd. of Falmouth*, 382 Mass. 432, 445-446 (1981). While it may be true that the subdivision control process has

some flexibility and doubtless often involves negotiation between the developer and the town, the power of a planning board is limited to the authority "clearly and specifically given by the statute." *Daley Constr. Co., Inc.* v. *Planning Bd. of Randolph*, 340 Mass. 149, 155 (1959). "It is useful in this connection to bear in mind the distinction between zoning, which limits the use of land, and subdivision control, which does not dictate in the same direct fashion how land will be used but, rather, compels the construction of ways which, among other things, are safe and convenient for travel and make provision for utilities." *Meyer* v. *Planning Bd. of Westport*, *supra* at 170. "A planning board does not have a roving commission. 'The only purposes recognized [by § 81M] are to provide suitable ways for access furnished with appropriate municipal utilities, and to secure sanitary conditions.' " *Sealund Sisters, Inc.* v. *Planning Bd. of Weymouth*, 50 Mass. App. Ct. 346, 351 (2000), quoting from *Daley Constr. Co., Inc.* v. *Planning Bd. of Randolph*, *supra* at 153, and sources cited.

In fact, the legislative history of the current subdivision control law, G. L. c. 41, §§ 81K-81GG, enacted in 1953, makes clear that revisions to the prior law were necessary in part to ensure that "the application of the law is limited to regulating the design and construction of ways in subdivisions," and to address the problem of "some well-intentioned but overzealous planning boards" using "their power of approving or disapproving plans of proposed subdivisions to enforce conditions doubtless intended for the good of the public, but not relating to the design and construction of ways within subdivisions." Bobrowski, Massachusetts Land Use and Planning Law, § 14.01, at 470 (2d ed. 2002), quoting from 1953 House Doc. 2249, at 10, Report of the Special Commission on Planning and Zoning. See *Daley Constr. Co., Inc.* v. *Planning Bd. of Randolph*, 340 Mass. at 153. Although a planning board's authority under the subdivision control law certainly encompasses, in appropriate circumstances, requiring open space, it does not extend to requiring the transfer of that open space to the public for reasons unrelated to adequate access and safety of the subdivision without providing just compensation. That waivers from some of the subdivision rules and regulations are required does not authorize a

planning board to exact conditions expressly prohibited by § 81Q, and unrelated to the regulation sought to be waived or the purposes of the subdivision control law. We think that if the Legislature intended to eliminate the prohibition of § 81Q where waivers are required in the context of subdivision control, it would have expressly so provided. Compare G. L. c. 40A, § 9 (authorizing conveyance of open land to town in context of approval of cluster subdivision special permit). See Bobrowski, *supra* at 9.06, at 279.

Finally, the judge cites to no authority for the proposition that the grant of a waiver may constitute "just compensation" as that term is used in § 81Q. At oral argument and somewhat less explicitly in its brief, the town denies that the waiver constituted "just compensation satisfying the requirements of the statute." Instead, the town argues that the open space requirement was a reasonable response to the concerns underlying the street length rule. As noted above, an open space requirement may be acceptable and is not challenged here, but the dedication of the open space for public use, and the transfer to the town, have no relation to the waiver of the dead-end street length rule and, in fact, would exacerbate safety issues related to the dead-end street length rule. Indeed, "[w]e cannot resist the conclusion that, however worthy the objectives," the conditions imposed attempt "to achieve a result which properly should be the subject of eminent domain." *Aronson* v. *Sharon*, 346 Mass. 598, 604 (1964). See *Nollan* v. *California Coastal Commn.*, 483 U.S. 825 (1987); *Dolan* v. *Tigard*, 512 U.S. 374 (1994). In the case before us, the requirements that open space be dedicated to the public use and transferred to the town or any other entity exceed the board's authority.

The board also imposed a condition requiring sprinklers in the residential buildings. This condition stands on different footing, grounded as it is on the fire safety concerns that legitimize regulation of dead-end streets. See *Federline* v. *Planning Bd. of Beverly*, 33 Mass. App. Ct. at 65. The condition imposing a sprinkler requirement is related to an issue within the scope of concern of the subdivision control law, correlates to the purpose of dead-end street limitations, and has not been shown to be unreasonable or an abuse of discretion. It does not exceed the board's authority.

2. *Disparate treatment.* The plaintiffs contend their subdivision plan was treated differently than others recently submitted to the planning board. The plaintiffs submitted the affidavit of plaintiff Robert Collings who had undertaken a review of subdivision approvals in the town over the last ten years and purports to identify ways in which the instant subdivision plan was treated differently. The affidavit provides minimal to no information as to the specifics of those subdivisions and failed to show the board acted arbitrarily or abused its discretion by treating substantially similar plans differently. *Lakeside Builders, Inc.* v. *Planning Bd. of Franklin*, 56 Mass. App. Ct. 842, 847-848 (2002).

3. *Zoning boundaries.* A portion of lot 5, as shown on the definitive plan, lies within the floodplain/wetlands district and the recreation/conservation district, and the board's decision, consistent with the restrictions of the bylaw, prohibits placing a home within those districts. The plaintiffs contend that there is a hill located on lot 5 that is erroneously included in the floodplain/wetlands and recreation/conservation districts and they sought a declaratory judgment asking the judge to correctly locate the boundaries on their property. It appears from the record that the applicants seek to position a home on the hill because of its views of the Assabet River whereas the town has identified this section of lot 5 as an "environmentally significant area with views" and a "high priority for protection." The conservation commission has recommended that it remain as permanent open space for the benefit of the public.

The bylaw provides "[b]oundary lines outlining the flood plain of the Assabet River shall be the limits of the Standard Project Flood Modified delineated on the plan entitled 'Flood Plains & Profiles', sheets 2, 3, and 4 of the Assabet River Technical Report, Department of the Army, Corps of Engineers, dated June, 1966 [1966 Army Corps plan] and on file with the Town Clerk." The bylaw provides further that "[w]here the limit of the Standard Project Flood Modified, referenced above, is used as a district boundary, the district boundary shall be determined by the elevations delineated on said plan."

The 1966 Army Corps plan delineates the standard projected flood modified at approximately 182 feet above the mean sea

level datum. The affidavit of Thomas DiPersio, a surveyor with forty-seven years of experience, avers that based on the 1966 Army Corps plan, the 182-foot elevation contained therein, and his instrument survey, he determined that, the "upland area," a 2.08-acre portion of the westerly side of lot 5 is outside the flood plain/wetlands district and that the flood plain line as shown on the plan should so reflect. It appears that the shading on the 1966 Army Corps plan nonetheless delineates the upland area as within the flood plain.

In the Land Court, the plaintiffs sought to introduce other, updated plans that have modified the flood plain to remove the upland area. The judge correctly rejected consideration of those plans as inconsistent with the bylaw. Here, the plaintiffs have abandoned any argument that other plans should be considered yet rely on the new instrument survey performed by their expert. They ignore that the instrument survey is tantamount to a new plan which, the judge found and the plaintiffs do not dispute, locates the boundary in a different position than the 1966 Army Corps plan.

Although the record does not amplify the mechanism used by the town to identify the flood plan, even the plaintiffs' statement of facts avers that the town relied only on the 1966 Army Corps plan. We agree with the Land Court judge that the issue here is not that the 1966 Army Corps plan is insufficient to locate the boundary on the ground, but that the plaintiffs simply want to locate the boundary in a different place. While we recognize that there is evidence in the record suggesting the upland area on lot 5 has been included in the flood plain district erroneously, the judge correctly declined to allow the plaintiffs to depart from the provisions of the bylaw. We note that § 5.1.1.7 of the bylaw provides that "[t]he Board of Appeals may grant a special permit to allow any use or STRUCTURE otherwise permitted in the district overlaid by the Flood Plain/Wetlands District if it is clearly shown that the land intended for said use or structures is included within the Flood Plains/Wetlands District through mapping error, or that no portion of the said proposed new use or structure will be below the flood plain elevation as defined in this Bylaw." To the extent the plaintiffs believe the upland area has been included in the flood plain district erroneously, they may pursue this remedy.

The boundaries of the recreation/conservation district are identified in § 2.2 of the bylaw as "shown, located, defined and bounded on a map entitled 'Town of Stow Zoning District Map,' prepared by Metropolitan Area Planning Council dated May 1, 1995 . . . ; which map shall also constitute an index map of all zoning districts, and together with all the maps referred to in Section 2.3 and all explanatory matter thereon shall constitute the Zoning Map of the Town." Section 2.3 of the bylaw provides various ways to identify boundaries of the districts shown on the zoning map including use of street lines, contour lines, lot lines, and distance measurements using the scale shown on the map. The plaintiffs insist that the zoning map and guidelines of § 2.3 fail to provide sufficient information to locate the boundaries of the recreation/conservation district on the ground. Specifically, they assert that there are different scales on the zoning map itself rendering distance calculations impossible. Further, the applicants submitted the affidavit of Thomas DiPersio who averred that despite his forty-seven years of experience, he was unable to use the zoning map to identify the location of the recreation/conservation district on the locus.[7]

A land owner is bound by the zoning map referred to in the bylaws as defining district boundaries "unless, carrying the burden of proof, he can demonstrate that a different boundary was intended." *Jenkins* v. *Pepperell*, 18 Mass. App. Ct. 265, 269 (1984). While the plaintiffs have pointed out certain flaws in the town's zoning map, they have failed to demonstrate the extent to which they were unable to clearly locate the boundary on the locus. Compare *ibid.* (ambiguity in zoning map prevented plaintiff from determining where the boundary was intended to fall within a 125-foot-wide strip). We are struck by the fact that notwithstanding the flaws pointed out by the plaintiffs, their expert was originally able to locate the recreation/conservation boundary on the definitive plan and the record is silent as to the basis on which the plaintiffs now assert the line is incorrect. We agree with the judge that the plaintiffs have failed to meet their burden to show that a different boundary was intended.

[7]The judge correctly rejected DiPersio's opinion that the recreation/conservation district boundaries are controlled by and are the same as the flood plain/wetlands district and the plaintiffs do not pursue that argument on appeal.

*Conclusion.* The conditions requiring reservation of open space for public use and transfer of the property to the town or a land trust exceed the board's authority, as they were imposed without compensation and do not serve the purposes of the subdivision control law. The judgment is therefore vacated and the matter is to be remanded to the board for reconsideration.

*So ordered.*