Graham, J.
The Plaintiff, Brida Realty, LLC (“Brida”), has brought this action, pursuant to G.L.c. 40A, §17, seeking judicial review of the Planning Board of the Town of Holliston’s (“Planning Board”) grant of a special permit to the defendant, Cumberland Farms, Inc. (“Cumberland”). This matter is now before the Court on Cumberland’s motion for summary judgment, pursuant to Mass.R.Civ.P. 56(c) and Brida’s cross motion for summary judgment. For the following reasons, the parties’ cross motions for summary judgment are DENIED in part, GRANTED in part, and REMANDED in part.
FACTS
The following facts are undisputed.
1. The Plaintiff, Brida, is a Massachusetts Limited Liability Company with a usual place of business at 74 West Central Street, Natick, MA.
2. The Defendant, Cumberland, is a Delaware corporation, and is duly authorized to do business within the Commonwealth and maintains a place of business in Canton, Massachusetts.
3. Defendant, Planning Board and its individual members, at all times relevant hereto comprise the duly constituted Planning Board for the Town of Holliston, a municipal corporation in the Commonwealth of Massachusetts.
4. Cumberland owns property located at 425 Washington Street, Holliston, MA (the “Cumberland property”). At all times relevant hereto Cumberland has operated a convenience store on its property.
5. Brida owns property located at 429 Washington Street, Holliston, MA (the “Brida property”). The Brida property abuts the Cumberland property.
6. Both the Cumberland property and the Brida property are zoned “commercial” under the Town of Holliston Zoning Bylaws (the “Bylaws”). No residential use is made of either property.
7. Pursuant to a written commercial lease dated January 1, 1997, the Brida property is leased to Holliston Petroleum.
8. Holliston Petroleum has in turn sublet the premises to the Holliston Elias Corporation (the “Brida sub-tenant”).
9. The Brida sub-tenant operates a gas station on the Brida property under the name “Holliston Texaco.”
10. In connection with the operation of the gasoline station on the Brida property, Brida’s sub-tenant periodically receives gasoline refueling from gasoline tanker trucks.
11. The Brida property and Cumberland property share a driveway, which provides access to Washington Street.
12. There is a “crossing pattern” along the shared driveway, in which vehicles leaving the Cumberland property drive across Brida’s property and vice versa.
13. On or about April 13, 1999, Cumberland applied to the Planning Board for a special permit under Section Ill-Use Regulations, T33a of the Bylaws and for site plan approval to renovate the existing convenience store, demolish an existing video store and construct and operate a self-service gasoline station on the Cumberland property (the “project”).
14. Cumberland proposed to install a gasoline station consisting of four gasoline pumps, three underground storage tanks with a capacity of24,000 gallons of gasoline, and a canopy, lights and other related equipment.
15. It proposed to meet the Bylaw’s requirement for 16 parking spaces by providing for eight challenged spaces around the gasoline pump island, 14 unchallenged spaces, and two spaces that are blocked in whole or in part by other spaces.
16. Cumberland’s proposed parking space number 11 is located perpendicular to parking space number 12, so that the southerly end of space 12 forms part of the westerly end of space 11. Parking space number 11 is a standard space perpendicular to the aisle parking space. It is one space in a row of spaces. Space 12 is a parallel parking space. It is perpendicular to the parking aisle and is tucked in between the last perpendicular space and the dumpster. Both ends of space 12 are blocked, with maneuvering space cut off by the end of the paving in front of the dumpster. If parking space 11 is occupied, a vehicle wishing to park in space 12 cannot park in that space except with difficulty and excessive maneuvering.
17. Parking space number 16 is a “stacked” parking space, requiring a person to remove a vehicle from space number 15 in order to remove a vehicle from space 16.
*469 18. The project will cause an increase in traffic in and around the Cumberland and Brida properties.
19. The increased traffic will cause increased conflicts among vehicles using the shared driveway. According to Cumberland’s expert, the major conflict will be between vehicles turning left going onto the Cumberland property and vehicles turning right into the Brida driveway, with the result that one car will have to wait for the other.
20. The addition of gasoline service will incrementally increase traffic volumes at the Cumberland property during rush hour.
21. The Planning Board convened the combined Site Plan and Special Permit public hearing on June 10, 1999. The hearing was continued and re-convened on each of the following dates and times: July 22, 1999 at 9:00 P.M., September 23, 1999 at 8:00 P.M., November 4, 1999 at 9:30 P.M. and November 10, 1999 at 7:30 P.M. Brida attended each hearing and opposed the proposed project.
22. At the close of the public hearing on November 10,1999, the Planning Board voted five to zero to grant Cumberland a special permit under Section III of the Bylaws. Section III of the Bylaws allows the operation of a self-service gasoline station in a commercial district pursuant to a special permit.
23. On or about December 6, 1999, Brida commenced this action pursuant to G.L.c. 40A, §17, seeking judicial review of the Planning Board’s grant of the special permit to Cumberland.
RULINGS AND DECISION
I. Standing
Under G.L.c. 40A, §17, a party’s status as an “aggrieved person” is a jurisdictional prerequisite to judicial review of a decision by a zoning board of appeals. Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719, 721 (1996). A plaintiff who plausibly claims that he or she will sustain some harm as .a proximate result of the challenged zoning decision is “aggrieved” for purposes of standing. See Boston Edison Co. v. Boston Redevelopment Auth., 374 Mass. 37, 46 (1977); Marashlian, 421 Mass. 719, 721 (1996) (“person aggrieved” shall not be construed narrowly). Under G.L.c. 40A, §17, “abutters . . . enjoy a rebuttable presumption [that] they are ‘persons aggrieved.’ ” Id. Because Brida’s property abuts Cumberland’s property, the presumption of standing attaches unless and until Cumberland offers evidence supporting its challenge to the plaintiffs standing. Watros v. Greater Lynn Mental Health & Retardation Ass’n, Inc., 421 Mass. 106, 111 (1996).
Cumberland concedes that the proposed project would increase traffic in and around the Cumberland and Brida properties, but counters that Brida’s concerns about increased traffic in and around the properties are not sufficiently “special or different from the concerns of the rest of the community” to warrant standing. Bell v. Zoning Board of Appeals of Gloucester, 429 Mass. 551, 554 (1999). Brida, however, has presented “credible evidence” that it would be particularly affected by the increased traffic generated by the proposed project, both on the shared driveway that lies in part on Brida’s own property and on the adjacent road. Marashlian, 421 Mass. 719, 721 (1996). The general public, which does not abut the Cumberland property, would not incur those impacts. That level of impact is well beyond the level required for standing. Id. at 721-23, 730 (minimal increase in traffic and decrease in parking space sufficient injury to support standing).
For the foregoing reasons, on the issue of standing, Cumberland’s motion for summary judgment is DENIED. Furthermore, Brida is aggrieved by the Planning Board’s decision as a matter of law. Its cross motion for summary judgment on the issue of standing is GRANTED.
II. Merits
The Planning Board’s grant of a special permit is subject to de novo review to determine whether it has substantial basis in fact or, on the other hand, the decision was arbitrary, capricious, whimsical or otherwise exceeded the authority of the Planning Board.
It is well settled that the standard on a Zoning Appeal is whether the Planning Board’s decision was “arbitrary and capricious.” DiGiovanni v. Board of Appeals of Rockport, 19 Mass.App.Ct. 339 (1985). “The Judge’s function on appeal [is] to ascertain whether the reasons given by the ... [Board] had a substantial basis in fact, or were on the contrary, mere pretexts for arbitrary action or veils for some reasons not related to the purposes of the zoning law.” Vazza Properties, Inc. v. City Council of Woburn, 1 Mass.App.Ct. 308, 312 (1973). The Court does not possess the same discretionary power as does the Planning Board, and a decision of the Planning Board can only be disturbed if it is based on a legally untenable ground or is “unreasonable, whimsical, capricious or arbitrary.” Subaru of New England, Inc. v. Board of Appeals of Canton, 8 Mass.App.Ct. 483 (1979); also see, S. Volpe & Co., Inc. v. Board of Appeals of Wareham, 4 Mass.App.Ct. 357 (1976); Caruso v. Pastan, 1 Mass.App.Ct. 28 (1973) (further citations omitted).
Brida contends that the Planning Board’s decision should be annulled because the proposed use would violate the Bylaws as follows: (1) traffic at the properties will increase, without provision for safe and efficient access to the properties, (2) the gasoline station may not be built in the Aquifer Protection District, (3) deliveries to the gasoline station would violate the Bylaw noise limits, and (4) the number of legitimate and practical parking spaces would fall short of the Bylaw requirement.
*470 A.Traffic Impacts
The parties’ experts are in agreement regarding the traffic impacts of the proposed development and I, therefore, find there exists no material factual dispute on this issue.
The proposed development would increase traffic at the Cumberland property during rush hour by approximately 27 additional entering vehicles. The increase in traffic which will result from the proposed project also will cause increased conflicts and delays among vehicles using the shared driveway, but that increase will be incremental. The parties are in agreement that the increase of traffic and conflicts will not be significant and will not prevent safe efficient access to and from the properties. Therefore, there is no disputed material fact regarding the traffic impacts of the proposed development. I find that the increase in traffic will not be significant over the existing use and that safe and efficient access will be provided. Having so found, I further find the decision of the Planning Board in granting the special permit was not arbitraiy, whimsical, capricious or in excess of the Planning Board’s authority in its treatment of the traffic impacts of the proposed development. Cumberland’s motion for summary judgment on the issue of traffic is GRANTED.
B.Aquifer Protection Provisions
Brida claims that the Planning Board’s approval of a special permit under Section III 33a of the Bylaws was in violation of the law and arbitraiy and capricious as the proposed gasoline use and storage would violate the Aquifer Protection provisions of the Bylaw. The Aquifer Protection provisions were not and could not have been acted upon by the Planning Board in this instance and are properly taken up in connection with any application Cumberland may make to the Zoning Board of Appeals (“ZBA”) under that provision of the Bylaw. The ZBA has jurisdiction to hear and decide any special permit applications under the Aquifer Protection provision of the Bylaw. Therefore, the approval of two different municipal Boards is necessaiy to operate a self-service gasoline station on the Cumberland property.
The applicant necessarily has to approach one of the Boards first. There is no provision in the Bylaw for joint application. Brida suggests that Cumberland’s application could be stayed while an application from the ZBA is pursued. This Court is not persuaded there exists any compelling reason that prior review by the ZBA is required.
Brida concedes that it would not be desirable to adopt a rule that would allow different municipal Boards, each of which had discretion to allow or grant a permit, to reject applications on the sole grounds that other necessaiy relief has not been obtained. Brida’s position, however, is that in this circumstance the Bylaw is plain, and neither the ZBA nor any other board has discretion to allow Cumberland’s proposed new use because it entails new underground storage of toxic or hazardous materials in the Aquifer Protection District. Accordingly, Brida argues, in granting the special permit at issue here, the Board violated Section III of the Bylaw, which specifically requires that a special permit be issued only for uses “in conformity with the provision of section . . . V,” the Aquifer Protection provisions. However, to reach this conclusion this Court must engage in a substantive analysis of the Aquifer Protection provisions for a special permit which has not been made. Such a review by this Court would not be consistent with the law of administrative review of a municipal proceeding.
The ZBA of the Town of Holliston is charged in the first instance with analyzing any application for special permit under the Aquifer Protection provision of the Bylaw. The appropriate time for Brida to raise these issues is if and when Cumberland applies to the ZBA for a special permit pursuant to Section V-L of the Bylaw. Meyer v. Planning Bd. of Westport, 29 Mass.App.Ct. 167, review denied, 408 Mass. 1104 (1990) (Board of Health requirements not relevant in Planning Board approval of subdivision plan as decisive action of Board of Health would occur when building permits for individual lots were sought).
In any event, the special permit in this instance is conditioned upon Cumberland securing any other necessaiy approvals. Special Permit Condition #2 provides, “No construction or site work may commence until all necessaiy approvals under the Zoning Bylaws have been obtained from the Town of Holliston.” To the extent a special permit under the Aquifer Protection provision is necessary, Cumberland will have to secure the same from the ZBA prior to construction and site work in connection with the subject special permit. Therefore, the grant of the special permit did not result in any violation of any other provision of the Bylaw which requires Cumberland to obtain additional authorization. Therefore, Cumberland’s motion for summary judgment is GRANTED on the issue of the Aquifer Protection provision of the Bylaws.
C.Noise
Brida claims that the proposed project will violate the noise provision of the Bylaw and therefore the Planning Board’s decision was arbitraiy, capricious and in excess of its authority. On de novo review, this Court is charged with finding facts and, where necessaiy, interpreting the meaning of disputed provisions of the Bylaws. Kiss v. Board of Appeals of Longmeadow, 371 Mass. 147, 1154 (1976); Howland v. Bd. of Appeals of Plymouth, 13 Mass.App.Ct. 520 (1981).
The undisputed facts establish that the diesel tanker trucks used in delivery of gasoline to Cumberland would exceed the noise limits in Section V-N.4(a) of the Bylaws.[2] As the Special Permit contains a condition which prohibits the idling of such delivery vehicles on the Cumberland properly, the activity *471 implicated in this instance is gasoline tanker trucks accessing the property and leaving the property. The Planning Board concluded that “ambient noise limits would not be adversely impacted by the proposed use.” Clearly, diesel tanker trucks would produce noise above the ambient levels, in violation of the maximum noise levels permitted under the Bylaws. However, Brida also receives deliveries of gasoline by tanker trucks similar to those of which it now complains. The Planning Board obviously considered this factor in reaching its decision, and concluded that by prohibiting idling of the delivery vehicles on the Cumberland property would enable Cumberland to comply with the noise limits of the Bylaws. The Planning Board’s decision was not arbitrary or capricious with regard to the noise created by Cumberland’s proposed property use, and Cumberland’s motion for summary judgment on the issue of noise is, therefore, GRANTED.
D. Parking Requirements
The Planning Board’s finding that the proposed plan contains a sufficient number of parking spaces misapplies the Bylaw and is unsupported. The Planning Board explicitly included the “areas in front of the proposed canopy and alongside the dispensers” in its calculation of the number of spaces available for parking. However, §V-C.2 of the Bylaw states that “(n]o storage, display, or loading area shall be counted as parking space,” and the Building Inspector expressly confirmed that the areas around the gasoline pumps do not count as parking spaces.[3] This interpretation follows the plain language of the Bylaw, as areas dedicated to pumping gasoline are not parking spaces within the ordinary meaning of that phrase. Even if there were ambiguity, the Bylaw delegates any authority over deviation from the provisions of Section V-C.2 to the Building Inspector, not the Planning Board, and deference is therefore owed to the Building Inspector. See Martin v. Occupational Safety & Health Review Commission, 499 U.S. 144 (1991) (where two agencies disagree, the court will defer to the one with statutory authority over the matter).
If those eight parking spaces alongside the canopy and the dispensers are excluded, the proposed project would still have a sufficient number of spaces to meet the parking requirement if the remaining spaces were deemed to be legitimate useable parking spaces. However, if any one of the challenged spaces is excluded, the proposed project is left with an insufficient number of legitimate parking spaces to satisfy the Bylaw. Since the Board expressly relied upon “the areas in front of the canopy and alongside the dispensers,” in finding sufficient parking spaces, it evidently did not accept Cumberland’s arguments regarding the remaining spaces. Indeed, the Planning Board’s finding suggests that it found sufficient parking spaces only by counting the area at the pumps as possible parking spaces and was not willing to find that the plan showed sufficient practical parking without those spaces.
The Bylaws require 16.33 parking spaces for the project (which the parties agree can be rounded down to 16). These parking spaces clearly must be usable, otherwise, the Bylaw’s requirements would be meaningless. See Manning v. Boston Redevelopment Authority, 400 Mass. 444, 453 (1987) (local ordinances may not be construed as meaningless). Of the 16 spaces not located around the gasoline pumps, two are positioned behind other spaces, rendering them practicably inaccessible when the front spaces are occupied.
Space 12 is located perpendicular to space II, so that the southerly end of space 12 forms the westerly end of space 11. Therefore, space 12 is only accessible for parking with excessive and careful maneuvering. Parking space number 16 is a “stacked” parking space, which requires a person to remove a vehicle from parking space number 15 in order to remove a vehicle from space number 16. Moreover, if a vehicle is parked in space 15, space 16 is not accessible for parking at all. The design of these parking spaces departs from the intent of the Bylaws. Moreover, two of the 16 spaces are designated as “proposed employee parking only” and are, therefore, not available to the general public.
The Planning Board’s determination to grant the special permit without finding that Cumberland has complied with the requirements of the Bylaws is inconsistent with the plain terms of Section V-C(2) of the Bylaws. See Warcewicz v. Department of Environmental Protection, 410 Mass. 548, 550 (1991). Since the Planning Board did not consider and address the afore-mentioned parking issues, this Court must REMAND this case to the Planning Board for further findings on the issue of parking.
CONCLUSION
For the foregoing reasons, Brida’s cross motion for summary judgment is. GRANTED on the issue of standing; Cumberland’s motion for summary judgment as to traffic, noise, and the Aquifer Protection provisions is GRANTED; and the parties’ cross motions for summary judgment, on the issue of parking, are DENIED and that issue is REMANDED to the Planning Board for further findings.

The Court notes in connection with this issue that on the Brida property there is currently operated a gasoline station which is admittedly serviced by gasoline tanker trucks of the type Brida assumes will service the Cumberland Farms property.

The Building Inspector stated: “I can confirm that I am in full agreement that . . . the spaces directly adjoining the gasoline pumps which were shown on the plan submitted for the Cumberland Farms conversion may not be used as available space when calculating required off-street parking.”